{¶ 20} The facts in this case are simple and for the most part, uncontroverted. On December 19, 1999, Betty Barrish, whose estate is the plaintiff within, attended an open house being held by the Psychobiology Clinic at 2936-2940 Noble Road, Cleveland Heights, Ohio. This clinic is a tenant in a building owned by defendant Ebert.
 {¶ 21} At the relevant time, Mrs. Barrish was blind in her left eye, sight impaired in her right eye, and walked with a cane. On the day in question, her husband dropped her off at the rear entrance of the building while he went to park the car. The rear entrance to the building had a partially enclosed vestibule which protected patrons from the elements and a concrete wheelchair ramp. The wheelchair ramp extended the length of the vestibule, but not the width. There was a four foot gap between the edge of the wheelchair ramp and the wall of the vestibule. There were no lights on in the vestibule, and the windows in the vestibule were "tinted". There were no handrails on the ramp, there were no markings on the side of the ramp, no curb on the side of the ramp, and both the ramp and the floor below it were carpeted in dark brown carpeting. Mr. Barrish identified a portion of the ramp some three to four inches above the floor where Mrs. Barrish slipped off to the side and fell, breaking her hip. Before the court as a consequence of a motion for summary judgment were pictures of the vestibule, taken by and authenticated by Mr. Barrrish, an affidavit of Mr. Barrish, and a selected portion of the deposition of Mrs. Barrish.
 {¶ 22} The trial judge granted summary judgment in favor of the defendants, finding that "Plaintiff has not presented evidence as to the cause of her fall, nor has she presented expert testimony to establish that the wheelchair ramp was negligently designed, maintained, or constructed. Accordingly, the Court finds that there are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law."
 {¶ 23} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall, 77 Ohio St.3d 421, 430,1997-Ohio-259, 674 N.E.2d 1164. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1998),38 Ohio St.3d 112, 526 N.E.2d 798.
 {¶ 24} Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Zivich v. Mentor Soccer Club,82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267. Any doubts must be resolved in favor of the non-moving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-359,1992-Ohio-95, 604 N.E.2d 138.
 {¶ 25} As to the first prong of the court's finding, that the plaintiff had not presented evidence as to the cause of her fall, that is simply not true: the only two witnesses to this fall were Mr. and Mrs. Barrish. Both of them stated that at the time of the fall, Mrs. Barrish was ascending the wheelchair ramp and that her foot slipped off the unmarked and unguarded edge.[4]
 {¶ 26} As to the second prong of the court's finding, that expert testimony was necessary to establish that the wheelchair ramp was negligently designed, maintained or constructed, such is simply not the case.
 {¶ 27} In order to establish a cause of action for negligence, it is necessary to prove the existence of a duty of care, a breach of that duty of care, and injury that proximately flows from that breach. Feldman v. Howard (1967),10 Ohio St.2d 189.
 {¶ 28} In general, a premises owner owes a business invitee a duty of ordinary care, unless a danger might be described as "open and obvious." Campbell v. Hughes Provision Co. (1950),153 Ohio St. 9; Sidle v. Humphrey (1968), 13 Ohio St.2d 45. In the case of an open and obvious danger, the owner is under no duty to protect business invitees from dangers which are so obvious and apparent to such invitee that he may be reasonably expected to detect them and protect himself. The testimony of both Barrishes that the vestibule in question was not lit, contained an unmarked incline covered in a dark carpeting that was the same color as the non-inclined floor, and was an entrance to a medical building where medically and visually impaired persons might come removes from all doubt the issue of "open and obvious."
 {¶ 29} The next issue is the duty of ordinary care. The defense argued, and the trial court ruled, that an expert was needed in order to establish the standard of ordinary care. Expert testimony is not always required, however, to establish a standard of care. "Except for malpractice cases (against a doctor, dentist, etc.), there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received." Kemper v. Builder's Square (1996),109 Ohio App.3d 127, citing Thompson, Admx., v. Ohio Fuel GasCo. (1967), 9 Ohio St.2d 116; see, also, Anderson v. StrattonChevrolet (2000), Mahoning App. No. 99-CA-164, 2000-Ohio-2592;State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc. (2005),160 Ohio App.3d 727, 2005-Ohio-2222; Baiko v. Mays (2000),140 Ohio App.3d 1.
 {¶ 30} Finally, Appellee cites Hummel v. Taco Bell (Aug. 24, 1989), Cuyahoga App. No. 55871, and LeJeune v. Crocker ShellFood Mart Car Wash (Oct. 22, 1998), Cuyahoga App. No. 74262, as being on point and dispositive of the issues in the case sub judice. They are not. In Hummel, the court held that the only testimony regarding the cause of the fall was that "there was nothing on the wheelchair ramp which caused her to slip, and that it was a beautiful day, without rain or snow. Further she stated that she walked up the ramp in order to enter the restaurant, thus negating any possibility that she was unaware of the ramp while she was departing. Appellant also testified that there were no cracks or depressions in the pavement of the ramp. She simply slipped on the heel of her shoe and fell to the ground, having chosen to walk down the wheelchair ramp rather than stepping off the curb. Moreover, appellant does not allege that she is handicapped." In short, the only nexus between the wheelchair ramp and the fall was that the wheelchair ramp was the location of the fall. Nothing about the ramp itself or its surroundings was shown to have caused Ms. Hummel to fall.
 {¶ 31} In LeJeune, Ms. LeJeune exited a car, walked around the front of the vehicle, and fell over a wheelchair ramp. The court held that a wheelchair ramp of its own nature, is not per se dangerous as its nature is "open and obvious."
 {¶ 32} Neither of these decisions address the allegations at issue here. In this case, the border of the ramp was obscured by inadequate lighting and dark carpeting. Further, there were no handrails, nor was there a curb which might have offset the dangers created by the lighting and lack of contrast. The issue of whether this homemade, unusually configured wheelchair ramp posed a potential danger to handicapped persons who might utilize it was a question for the jury and it was hence error to grant summary judgment upon the issue.
[4] Mr. Barrish averred that, "I saw my wife's left foot slip from or miss the left edge of the ramp, and I watched her fall from the ramp to the floor, landing on her left side." (Charles Barrish Affidavit, ¶ 6). Mrs. Barrish testified that, "I started to walk up the ramp on the inside to the elevator and I was walking up and it was black on black and I did not see that there was a slab and my left foot just went right off." (Betty Barrish Deposition, p. 16, lines 8-11). She further testified that, "I was in the middle of it (the ramp). There was a drop to the floor and I went off the side down on the floor." (Id. at p. 17, lines 16-18).