STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee,

v.

KIA MOTORS AMERICA, INC., et al. Appellants.

[Cite as *State Farm Mut. Auto. Ins. Co. v. Kia Motors Am., Inc.*, 160 Ohio App.3d 727, 2005-Ohio-2222.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 04CA21.

Decided May 3, 2005.

728

Alessandro Sabatino Jr., for appellee.

Jeffrey P. Hinebaugh and H. Toby Schisler, for appellant Kia Motors America, Inc.

Charles K. Gould, for appellant Dutch Miller Chevrolet–Hyundai–Kia, Inc.

PETER B. ABELE, Presiding Judge.

{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment in favor of State Farm Mutual Automobile Insurance Company, plaintiff below and appellee herein. The jury determined that Kia Motors America, Inc. ("Kia") and Dutch Miller Chevrolet–Hyundai–Kia, Inc. ("Dutch Miller") were equally liable for property damage to State Farm's insureds' vehicle.

{¶ 2} Dutch Miller raises the following assignment of error:

The trial court erred in denying third party defendant-appellant, Dutch Miller Chevrolet–Hyundai–Kia Motors, Inc.'s, motion for directed verdict at the close of defendant-third party plaintiff-appellee, Kia Motors America, Inc's case-in-chief and at the close of all evidence at trial because Kia failed to present evidence on the essential elements of its negligent inspection claim

against Dutch Miller. Specifically, no evidence was presented, either through expert testimony or otherwise, to establish the standard of care and a breach of the standard of care, which proximately caused a fire in the vehicle at issue in this case.

Kia raises the following assignment of error:

The trial court erred by denying Kia's motion to dismiss State Farm's claims encompassed by the Product Liability Act.

{¶ 3} In April 2000, Londell and Martha Browning, State Farm's insureds, purchased a new 2000 Kia Sportage from Dutch Miller. Three or four months later, the Brownings noticed an intermittent "hot wire" smell. On September 28, 2000, the Brownings took the vehicle to Dutch Miller for service. Mrs. Browning advised Barbara Eplin, the service advisor, that the vehicle sometimes smelled like hot wires. After three or four hours, Dutch Miller had not located the problem. Dutch Miller returned the vehicle to the Brownings and advised them to return if the problem worsened. Ten days later, on October 8, 2000, the vehicle caught fire and was completely destroyed.

{¶ 4} On September 7, 2001, State Farm filed a complaint against Kia to recover the amount it paid to the Brownings for property damage to the Kia Sportage. The complaint alleged that (1) Kia negligently designed, manufactured, distributed, marketed or sold a 2000 Kia Sportage, (2) Kia negligently failed to warn of the dangers of the product, (3) the product was unsafe for its reasonably foreseeable intended use, (4) Kia breached express and implied warranties, (5) the risks inherent in the design outweighed the benefits, (6) Kia failed to design and manufacture the vehicle in conformity with industry standards, (7) the Sportage was unmerchantable and unfit, and (8) the vehicle was defective under the Products Liability Act.

{¶ 5} On October 1, 2001, Kia filed a motion to dismiss counts three, five, six, and eight of State Farm's complaint. Kia asserted that each claim alleged a cause of action under the Products Liability Act and because State Farm sought only economic damages, the Products Liability Act precluded the claims. On October 18, 2001, the trial court dismissed count eight of the complaint.

{¶ 6} Kia subsequently filed a third-party complaint against Dutch Miller for contribution. Kia alleged that Dutch Miller had negligently inspected the vehicle.

{¶ 7} On April 12 and 13, 2004, the court held a jury trial. Mrs. Browning testified that she had taken the vehicle to Dutch Miller at least once to have the dealership attempt to determine the source of the burning-wire smell. She explained that on September 28, 2000, she and her husband took the vehicle to the dealership. Mrs. Browning informed the service adviser, Barbara Eplin, that the vehicle sometimes smelled like burning wires. Eplin did not ask Mrs.

Browning any questions about when the smell occurred or where it seemed to originate.

{¶ 8} Mrs. Browning stated that while at Dutch Miller, she and her husband mainly sat in the balcony area overlooking the service bay. She did not observe anyone inspecting the vehicle, and she did not see anyone test-drive the vehicle. It appeared to her that the vehicle was never moved.

{¶ 9} After three or four hours had elapsed, the dealership told Mrs. Browning that it could not locate a problem. Eplin told Mrs. Browning to return if the problem worsened. Mrs. Browning stated that Eplin also told her to drive the vehicle. Mrs. Browning testified, "[Eplin] [a]sked if we had insurance and we said yes. She told us to drive it till it burnt and then they would find out what's wrong with it."

{¶ 10} Kia Motors America Regional Consumer Affairs Manager Timothy B. Beam testified that Dutch Miller did not submit to Kia any warranty claims for payment for the work it allegedly performed on the vehicle. Dutch Miller also did not properly document the "mileage-in" and "mileage-out," which would have revealed whether the dealership had driven the vehicle.

{¶ 11} After Kia rested, Dutch Miller moved for a directed verdict. It argued that Kia failed to present any expert evidence to establish the standard of care applicable to a car dealership inspecting a vehicle for an intermittent hot-wire smell. The court denied the motion.

{¶ 12} In its defense, Dutch Miller presented Eplin's testimony. She testified that the service technician who worked on the Brownings' vehicle let the Sportage run for approximately one and one-half to two hours.

{¶ 13} The jury subsequently found in State Farm's favor and in Kia's favor on its third-party complaint against Dutch Miller. The jury determined that Dutch Miller was 50 percent negligent. On May 25, 2003, the trial court ordered a $16,258.38 judgment in State Farm's favor against Kia Motors and awarded Kia a $8,079.19 judgment against Dutch Miller. Both Kia and Dutch Miller timely appealed the trial court's judgment.

I

{¶ 14} In its sole assignment of error, Dutch Miller asserts that the trial court erred by overruling its directed-verdict motion. Dutch Miller contends that Kia failed to present any testimony, expert or otherwise, regarding the standard of care for an automobile mechanic when inspecting a vehicle for an intermittent hot-wire smell and that Kia was required to present expert testimony to establish the standard of care applicable to an automobile-repair shop. Dutch Miller further argues that Kia failed to present any other evidence regarding the

standard of care. It contends that, "[i]n essence, the jury was left to decide that Dutch Miller was negligent simply because the vehicle was presented to the dealership with a concern of a hot wire smell and the vehicle caught fire several days later."

{¶ 15} Kia asserts that more than ample evidence exists to support a negligence finding and that expert testimony was unnecessary because the standard of care was within the jurors' common knowledge. Kia claims that the following evidence created factual issues for the jury to decide whether Dutch Miller negligently attempted to repair the vehicle: (1) the Brownings testified that the vehicle never moved from the same spot and they never saw anyone working on or inspecting the vehicle, (2) the repair order reflected that the mileage in and mileage out were the same, suggesting that the vehicle was not test-driven, (3) Dutch Miller did not submit a warranty claim to Kia seeking payment for any time spent by a technician inspecting the Brownings' vehicle, (4) Dutch Miller could not produce any records documenting the amount of time the technician spent working on the vehicle, and (5) Dutch Miller did not present any testimony from the service technician describing what efforts he made to diagnose the problem.

{¶ 16} Civ.R. 50(A)(4) sets forth the standard for granting a directed verdict. The rule provides:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

A motion for directed verdict presents a question of law. *Wagner v. Midwestern Indem. Co.* (1998), 83 Ohio St.3d 287, 294, 699 N.E.2d 507; *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252; *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 430 N.E.2d 935. "[A] motion for a directed verdict must be denied when 'substantial, competent evidence has been presented from which reasonable minds could draw different conclusions.'" *Kroh v. Continental Gen. Tire, Inc.* (2001), 92 Ohio St.3d 30, 31, 748 N.E.2d 36, quoting the court of appeals in *Kroh* (Dec. 15, 1999), Summit App. No. 19412, 1999 WL 1215167. A court may not grant a directed verdict when the record contains sufficient evidence going to all the essential elements of the nonmoving party's case. See, e.g., *Texler v. D.O. Summers Cleaners* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271; *Wells v. Miami Valley Hosp.* (1993), 90 Ohio App.3d 840, 631 N.E.2d 642.

{¶ 17} In ruling upon a motion for a directed verdict, a trial court may not weigh the evidence. *Texler,* 81 Ohio St.3d at 679, 693 N.E.2d 271. Rather, the court must construe the evidence most strongly in favor of the nonmoving party. See, e.g., *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 423 N.E.2d 467. In construing the evidence most strongly in favor of the nonmoving party, the court must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Broz v. Winland* (1994), 68 Ohio St.3d 521, 526, 629 N.E.2d 395; *Blair v. Goff–Kirby Co.* (1976), 49 Ohio St.2d 5, 10, 3 O.O.3d 4, 358 N.E.2d 634.

{¶ 18} We disagree with Dutch Miller's argument that Kia was required to present expert testimony to establish the standard of care.

"Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received. * * * Courts could very easily expand the area in which expert testimony is required to establish the standard of conduct, but the tendency has been instead to resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid."

*Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 117–118, 38 O.O.2d 294, 224 N.E.2d 131, quoting 2 Harper & James on The Law of Torts 966, Section 17.1; see, also, *Kemper v. Builder's Square, Inc.* (1996), 109 Ohio App.3d 127, 132, 671 N.E.2d 1104 ("Expert testimony, or any testimony at all, for that matter, is not always required to establish a standard of care. Even where not all of the factors involved as to how a standard of care should be exercised are obvious to, or readily understandable by, a lay jury, affirmative evidence of the standard of care is not necessarily required").

{¶ 19} The standard of care that Dutch Miller should have followed to investigate a burning-wire smell is "not a matter which [is] highly technical, scientific in nature, or beyond the experience or knowledge of the average jury." *Jurgens Real Estate Co. v. R.E.D. Constr. Corp.* (1995), 103 Ohio App.3d 292, 298, 659 N.E.2d 353. Instead, it is a matter within the jury's common knowledge. Thus, we disagree with Dutch Miller that the court should have granted its directed-verdict motion based on Kia's failure to present expert testimony regarding the standard of care. Issues of this nature more appropriately concern the weight of a party's evidence. Obviously, the opposing side is free to argue to the trier of fact about the relative strength, or lack thereof, of a party's evidence.

{¶ 20} We additionally disagree with Dutch Miller's contention that Kia failed to present any other evidence regarding the standard of care or any evidence that Dutch Miller breached that standard of care, thus requiring the

court to enter a directed verdict. Because the standard of care was not technical or scientific, the jury could use its collective common sense to determine what Dutch Miller should have done. For example, it could have decided that Dutch Miller should have done something more than letting the car idle in the same place for three or four hours, assuming that the jury believed Mrs. Browning's testimony. The record contains some evidence that Dutch Miller's service technician did little, if anything, to diagnose the problem. No one should doubt that the standard of care requires more than that. Furthermore, we agree with Kia's statement of evidence that supports its negligence claim. Kia presented sufficient evidence to allow reasonable minds to reach differing conclusions. Thus, in view of the foregoing we agree with the trial court's conclusion that a directed verdict in Dutch Miller's favor would have been inappropriate.

{¶ 21} Furthermore, we believe that Dutch Miller's reliance on *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489, is misplaced. In *State Farm*, not only did the plaintiff fail to present any evidence regarding the standard of care, but the evidence also failed to establish that the defendant failed "to take reasonable steps to determine why various electrical components failed; or that an undiagnosed defect, which should have been discovered in the exercise of ordinary skill, proximately caused the fire." Id. at 10, 523 N.E.2d 489. In the case sub judice, however, evidence does exist that the undiagnosed defect caused the fire and that Dutch Miller failed to take reasonable (or possibly any) steps to diagnose the problem.

{¶ 22} Accordingly, based upon the foregoing reasons, we overrule Dutch Miller's assignment of error.

## II

{¶ 23} In its assignment of error, Kia asserts that the trial court erred by denying its motion to dismiss counts three, five, and six of the complaint. Kia contends that these are products-liability claims and that Ohio law precludes products-liability claims seeking economic damages only.

{¶ 24} Under the Products–Liability Act, a claimant cannot recover economic damages alone. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 30. Instead, in order to fall within the purview of the act, and to be considered a "products liability claim" under R.C. 2307.71(M), the complaint must allege damages other than economic ones. Id, citing *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, 661 N.E.2d 714, syllabus.

{¶ 25} "[T]he failure to allege other than economic damages does not necessarily destroy the right to pursue common-law product liability claims."

*Beretta,* 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136 at ¶ 31. "The common-law action of negligent design survives the enactment of the Ohio Products Liability Act, R.C. 2307.71 et seq." *Carrel v. Allied Prods. Corp.* (1997), 78 Ohio St.3d 284, 677 N.E.2d 795, paragraph one of the syllabus. Therefore, although a plaintiff may be precluded from asserting its claims under Ohio's Products Liability Act, "it can still assert its common-law negligent-design claims. At common law, a product is defective in design 'if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or if the benefits of the challenged design do not outweigh the risk inherent in such design.' *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814, syllabus. Moreover, a product may be defective in design if the manufacturer fails to incorporate feasible safety features to prevent foreseeable injuries. *Perkins v. Wilkinson Sword, Inc.* (1998), 83 Ohio St.3d 507, 511, 700 N.E.2d 1247." *Beretta,* 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, at ¶ 31.

{¶ 26} A plaintiff may also bring a common-law failure-to-warn claim. Id. at ¶ 32, 2002-Ohio-2480, 768 N.E.2d 1136. To recover under a failure-to-warn theory at common law, the plaintiff must prove that the manufacturer knew or should have known, in the exercise of reasonable care, of the risk or hazard about which it failed to warn and that the manufacturer failed to take precautions that a reasonable person would take in presenting the product to the public. Id., citing *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 257, 556 N.E.2d 1177.

{¶ 27} Counts three, five, and six of State Farm's complaint allege common-law claims that survive enactment of the Products Liability Act. The counts essentially allege common-law negligent-design and failure-to-warn claims. As the Ohio Supreme Court explicitly held in *Beretta,* both types of claims survive enactment of the Products Liability Act.

{¶ 28} Accordingly, based upon the foregoing reasons, we overrule Kia's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

KLINE and MCFARLAND, JJ., concur.