OPINION
{¶ 1} In this action, Russell and Clella Routzahn appeal from a summary judgment decision granted in favor of Defendant, Herman Garrison. Mr. Routzahn suffered personal injuries when he fell off a platform attached to an International Farm-All tractor that Garrison was driving. After the accident, Routzahn and his wife filed suit against Garrison, claiming that Garrison had operated the tractor in a negligent or reckless manner. They also claimed that Garrison had negligently designed and built the wooden platform on which Routzahn was riding at the time of the accident. The trial court rejected the negligent design claim because Garrison was not an individual contemplated by the products liability statutes. The court also rejected negligence claims because the danger of falling from the platform was an "open and obvious" danger of which Mr. Routzahn was well aware.
 {¶ 2} The Routzahns now appeal, asserting the following assignments of error:
 {¶ 3} "I. The trial court erred by holding that the absence of guardrails on a platform attached to a farm tractor constituted an open and obvious danger.
 {¶ 4} "II. The trial court erred by finding an open and obvious danger despite Mr. Garrison's active participation in Mr. Routzahn's work.
 {¶ 5} "III. The trial court erred by applying the open and obvious danger doctrine to a condition which Mr. Routzahn was required to encounter in the normal performance of his employment related duties and responsibilities.
 {¶ 6} "IV. The trial court erred by converting Herman Garrison's common law negligent design claim into a products liability action under the Ohio Products Liability Act (O.R.C.2307.71 et seq.)."
 {¶ 7} After considering the evidence and applicable law, we find the assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 II {¶ 8} The only items of evidence submitted to the trial court were the deposition of Mr. Routzahn and an affidavit from Mr. Routzahn that was attached to his memorandum opposing summary judgment. In the deposition, Routzahn indicated that for many years, he had owned a farm of about 350 acres, where he raised cattle and grew corn. In 1984, Routzahn sold the farm because he intended to retire, but instead went to work on a large farm of about 750 acres that was owned by Harriet Steel. Routzahn worked on Steel's farm for about 13 years, until he was around 76 years old. Steel raised cattle, hogs, corn, wheat, and soybeans, and Routzahn did general farm work such as he had done on his own farm. Needless to say, Routzahn spent many years around farm equipment like tractors and wagons.
 {¶ 9} In the late 1990's, Routzahn also helped out his cousin, Herman Garrison, on a small farm of about 40 acres that Garrison owned. Garrison raised soybeans, wheat, and hay, but needed help because he had undergone eye surgery. Routzahn helped Garrison with planting, harvesting, and general farm work for about two years. Routzahn was paid around $7.00 an hour for his work, but Garrison did not take out taxes or withhold money for social security and so forth.
 {¶ 10} The accident happened on May 31, 2002. On that day, Routzahn and Garrison had been out working in the field and were coming in around noon, to eat dinner. They had two John Deere tractors out in the field as well as an International Farm-All tractor (Farm-All). Garrison drove one John Deere tractor, planting soybeans, and Routzahn drove the other John Deere, working ground to get it ready for cultivating. They used the Farm-All to drive back and forth between the barn and the field.
 {¶ 11} The Farm-All had one seat, which was occupied by the person who was driving. Garrison had also built a platform on the back of the Farm-All, where another person could ride. Routzahn testified that this platform was well-built and was well-made. The platform had guardrails but they were not in place at the time of the accident.
 {¶ 12} On the day of the accident, Garrison had loaded soybean seed bags onto the platform. When the men drove back to the barn, Routzahn was sitting on the bags of soybeans. Routzahn was aware that the bags were made of paper and were slick. He had loaded lots of bags of soybeans before and knew they were slick.
 {¶ 13} The distance from the field to the house was about a quarter mile. Garrison drove down a lane and turned left into his barn lot. Garrison was driving normally and was not weaving. He was not going at a high rate of speed, because the barn lot was only sixty feet wide. Consequently, Garrison would not have been able to speed. When Garrison turned into the lot, the bags slipped, and Routzahn fell off, onto a concrete pad, and broke his hip.
 {¶ 14} In his deposition, Routzahn said several times that Garrison did not do anything wrong. Routzahn said the platform was well-built and that he had been on it before the day of the accident. The platform was not unsafe. Routzahn also said Garrison was not driving recklessly and that Garrison turned into the lane as he normally did. Routzahn said that he did not think Garrison had done anything wrong, and was not at fault for the injury.
 {¶ 15} Based on the above facts, Garrison moved for summary judgment. In responding to the motion, Routzahn filed an affidavit, indicating that the platform had guardrails that were not in place the day of the accident. Routzahn claimed that he believed Garrison should have been more careful in operating the tractor over uneven ground and in turning into the barn lot. Routzahn also stated that Garrison should have designed the platform with the means for a passenger to stabilize himself in case the passenger lost balance due to the tractor's operation. Finally, Routzahn stated that his responses about Garrison's degree of fault for the accident resulted from an "instinctual defensive reaction" to questioning concerning the negligence of a life-long friend and close family member. Routzahn attributed his favorable deposition testimony to a reluctance to blame his cousin for the accident.
 {¶ 16} Garrison filed a motion to strike the affidavit because it was directly contradictory to Routzahn's deposition testimony. The trial court sustained the motion in part, and struck the paragraphs in which Routzahn changed his testimony about fault and explained his reasons for the change. The court's decision was based on a finding that these statements were made in bad faith for the purpose of retracting damaging evidence.
 {¶ 17} In the first assignment of error, Routzahn contends that the absence of guardrails on the platform was not so open and obvious a danger as to relieve Garrison from owing any duty of care. We disagree with this contention.
 {¶ 18} In Armstrong v. Best Buy Co., Inc. (2003),99 Ohio St.3d 79, 80, 2003-Ohio-2573, 788 N.E.2d 1088, the Ohio Supreme Court reaffirmed the viability of the open-and-obvious doctrine, "which states that a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." 2003-Ohio-2573, at ¶ 5, citing Sidle v. Humphrey
(1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus. The Ohio Supreme Court explained in Armstrong that:
 {¶ 19} "[t]he rationale underlying this doctrine is `that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' * * * A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. * * * When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." (Citations omitted).
 {¶ 20} In Armstrong, the Ohio Supreme Court went on to stress that: {¶ 21} "`[t]he * * * characterization of the open and obvious doctrine as a "defense" that should be submitted to the jury as part of the comparison of the relative fault of the parties overlooks the simple truism that where there is no duty there is no liability, and therefore no fault to be compared.'" Id at ¶ 11 (citation omitted).
 {¶ 22} In the present case, the lack of a guardrail was an open and obvious danger of which Routzahn should have been aware. See Morris v. Hothem Investments, Ltd., Wayne App. No. 03CA0077, 2004-Ohio-4869, at ¶ 12-17 (affirming trial court grant of summary judgment, based on the fact that the presence of stairs and absence of a guardrail were such open and obvious conditions that plaintiff should have been aware of the dangers). See, also, Primavera v. Guthery (June 24, 1996), Marion App. No. 9-96-11, 1996 WL 355042, *2 (lack of guardrails in hayloft and walkway were open and obvious dangers precluding recovery by plaintiff for injuries sustained when she fell).
 {¶ 23} Furthermore, not only was the lack of a guardrail an obvious danger, Routzahn also testified that he knew the seed bags were slippery, as he had handled them many times. Garrison, therefore, had no duty to warn Routzahn about the platform, or about the possibility that he might fall while sitting on seed bags.
 {¶ 24} In Simpson v. Concord United Methodist Church,
Montgomery App. No. 20382, 2005-Ohio-4534, we rejected an attempt to find a property owner liable for failing to remove accumulations of ice and snow on a parking lot. In this regard, we noted that:
 {¶ 25} "[w]hether the existence of a hazard imposes a duty of care on a property owner depends on the condition from which it arose. If the condition was one known to the invitee or of which he reasonably should have known, that is, one which is open and obvious, and the hazard is one commonly associated with the condition, a particular risk of injury the hazard presents is reasonably foreseeable. Then, the owner or operator of the premises owes no duty to his invitees to cure the hazard or warn his invitees of its risks because, being charged with knowledge that the hazard exists, they may take steps to protect themselves from such risks. However, where the condition is instead latent or concealed, the hazards associated with it cannot be known. The risk of injury the hazard presents is then not foreseeable, and, not being foreseeable, the invitee is assumed to be unable to protect himself from the risks involved. In that circumstance, the law imposes a duty on the owner/operator to cure the hazard or warn of its existence when he created the condition or reasonably should have discovered it." Id. at ¶ 23 (citation omitted).
 {¶ 26} Because the lack of guardrails was an open and obvious condition, Garrison had no duty to warn Routzahn not to sit on the seed bags nor was he required to "cure the hazard" by reinstalling the guardrails. Since Garrison had no duty in this regard, he was not liable for Routzahn's injury, and the trial court correctly granted summary judgment in his favor.
 {¶ 27} The dissent argues that the "open and obvious" doctrine should not apply where a property owner commits "active negligence" instead of merely allowing a passive or static condition on the premises. Another way of referring to this situation is that an exception to the "open and obvious doctrine" applies "when an otherwise open and obvious hazard is aggravated by another condition created or allowed to exist by the landowner." Monahan v. Belmont Cty. Agricultural Soc. (July 15, 1998), Belmont App. No. 97-BA-23, 1998 WL 404217, citingPeselnick v. Firestone Tire Rubber Co. (1990),67 Ohio App.3d 313, 317, 586 N.E.2d 1182.
 {¶ 28} In Monahan, the plaintiff tripped over cables that were strewn across a roadway in a fairgrounds. The plaintiff claimed that even if the cables were an obvious hazard, the defendants were liable because they allowed an aggravating condition to exist, i.e., vehicular traffic in the roadway that diverted the plaintiff's attention. However, the Seventh District Court of Appeals refused to apply the exception, stating that:
 {¶ 29} "appellants were fully aware of the possibility of vehicular traffic. In addition, good logic and common sense should indicate to a person walking along a roadway that they may encounter vehicular traffic. It is also of no consequence that appellee never made any representations to appellants that there would be absolutely no vehicular traffic on the roadway. Consequently, the possibility of vehicular traffic was a foreseeable condition, taking it out of any exception to the `open and obvious' doctrine." 1998 WL 404217, *4.
 {¶ 30} Similarly, in Peselnick, the plaintiff argued that a landowner should be liable for failing to remove grease and oil that combined with an accumulation of ice to create a "substantially more dangerous condition" than the plaintiff should have anticipated. The plaintiff agreed that it was reasonable for him to expect icy conditions, but contended it was "unreasonable for him to expect a hazardous condition aggravated by the grease and oil." 67 Ohio App.3d at 317. Two members of the appellate court found factual issues in this regard, and reversed the grant of summary judgment. Id. at 317-18.
 {¶ 31} In the present case, the lack of guardrails was obvious, and Routzahn was also aware the seed bags were slick, as he had loaded them before and had handled many such bags. Consequently, the possibility of falling off the seed bags was foreseeable, and there was no hazardous condition that Routzahn would not have reasonably anticipated.
 {¶ 32} The dissent in this case argues that the condition that caused Routzahn's injury was not a static condition, but was allegedly due to Garrison's "active" negligence. To support this theory, the dissent relies on Simmons v. American PacificEnterprises, L.L.C., 164 Ohio App.3d 763, 2005-Ohio-6957,843 N.E.2d 1271. In Simmons, an employee put a dock plate between the plaintiff's truck and a loading dock, in order to cover a gap. After the plaintiff finished unloading his freight, the employee removed the plate, leaving a gap between the end of the truck and the loading dock. The plaintiff remained in the truck to rearrange his own cargo, and was unaware the plate had been removed. He then stepped off the back of the truck and fell.2005-Ohio-6957, at ¶ 2-3.
 {¶ 33} After discussing the difference between "static conditions" and "active negligence," the Tenth District Court of Appeals commented that:
 {¶ 34} "[h]ere, the trial court found that APE [the defendant] did not have a duty to warn Simmons of the injury-causing gap because the condition was open and obvious as a matter of law. Although Simmons had his back to the gap and was not aware of its existence, Simmons acknowledged that he would have seen the gap had he turned and looked. Plaintiffs' negligence claim, however, was not predicated solely on a failure to warn of a preexisting static hazard; plaintiffs allege that Brahimi negligently removed the dock plate while Simmons was still in the process of unloading freight. The evidence of record in fact demonstrates that Brahimi removed the dock plate some time before Simmons's injury, thus creating an issue of fact concerning Brahimi's actions and whether they constitute an act of negligence to which the open-and-obvious doctrine would not apply. While the amount of time elapsing between Brahimi's actand Simmons's injury may be significant in determining whetherBrahimi's action had become a static condition on the premises,
the record evidence makes sufficiently clear that when the facts are construed in a light most favorable to plaintiffs, reasonable minds could find that Brahimi's active conduct caused Simmons's injury, thus rendering the open-and-obvious doctrine inapplicable." Id. at ¶ 22 (emphasis and parenthetical material added).
 {¶ 35} The Tenth District's comments in Simmons clearly indicate that a condition may become static through lapse of time. Notably, the time period in Simmons appears to have been only a matter of minutes that passed while the plaintiff rearranged some cargo in his truck. Even under that short time frame, the Tenth District indicated that the "open and obvious" doctrine could still apply. However, the precise amount of time was not reflected in the record, which may have been the reason the Tenth District felt compelled to reverse and remand. Id.
 {¶ 36} In contrast, the guardrails in the present case were absent for a long period of time, and became a static condition. Likewise, the seed bags were present for a substantial time. According to Routzahn's testimony, the guardrails had been on the platform at some point in the past, but were not on the platform at all the day of the accident. The bags were also on the platform during the entire time the men worked in the field. As we mentioned, the accident occurred around lunchtime. Routzahn was aware that the platform lacked any means for a passenger to stabilize upon losing balance. Knowing this, he chose to sit on top of seed bags that he knew were slippery, thereby exposing himself to an open and obvious hazard.
 {¶ 37} In reaching this conclusion, we do not hold that any specific time period automatically causes an active condition to become static. Nonetheless, under the specific facts of this case, we see no reason not to apply the "open and obvious" doctrine.
 {¶ 38} As a further matter, we note that we have applied the doctrine of primary assumption of the risk to find a lack of duty where an individual encounters an obvious risk. See, e.g.,Willoughby v. Harrison Radiator, Div. Of General Motors Corp.
(May 11, 1989), Montgomery App. No. 11225, 1989 WL 49482. InWilloughby, the plaintiff was using a scissors lift near the edge of a loading dock at Harrison Radiator's warehouse. After raising the lift twenty-two feet, the plaintiff realized that he needed to be closer to his work. Without lowering the lift, the plaintiff moved the lift a short distance. However, when he released the hand controls, the lift did not stop moving, and dropped over the edge of the dock, causing him serious injury.
 {¶ 39} The plaintiff subsequently sued Harrison Radiator, claiming that Harrison had been negligent in not placing protective railings around the loading dock, as that would have eliminated the hazard. 1989 WL 494482, *2. On appeal, we held that Harrison Radiator had no duty to protect business invitees who are aware of and appreciate risks. In affirming the summary judgment on behalf of Harrison Radiator, we stated that:
 {¶ 40} "Appellant [Willoughby] also argues that his admitted knowledge and appreciation of the risk should not be a bar to a claim of negligence against Harrison Radiator, citing Andersonv. Ceccardi (1983), 6 Ohio St.3d 110, which merged the defense of `assumption of risk' with contributory negligence under the comparative negligence statute, R.C. 2315.19. However, the court in Anderson specifically omitted from that merger `primary assumption of risk'. In that form, while there is a knowledge of the danger and acquiescence in it on the part of the plaintiff, there is also no duty owed by defendant to the plaintiff. Here, * * * Harrison Radiator had no duty to protect Willoughby from the risks because, as a business invitee, he was aware of and appreciated them. * * * Willoughby's action amounts to primary assumption of risk, and leaves no liability in Harrison Radiator to be subject to the comparative negligence process or analysis." 1989 WL 49482, *3 (parenthetical material added. Emphasis in original).
 {¶ 41} Therefore, even if we decided that the "open and obvious" doctrine did not apply, and that Garrison's alleged negligence was "active," we would still affirm the summary judgment decision, based on Routzahn's primary assumption of the risk.
 {¶ 42} "Implied" assumption of the risk is another theory that can be applied in negligence cases, but it typically involves a weighing of the comparative negligence of the parties.Carey v. AK Steel Corp. (July 13, 1998), Butler App. No. CA98-02-022, 1998 WL 391183, *4. Assuming for purposes of argument that "implied" assumption of the risk and comparative negligence might apply, we must say that this case typifies the unusual situation where the evidence is so compelling that reasonable minds can reach but one conclusion, which is that the issue should not be submitted to the jury. Simmers v. BentleyConstr. Co., 64 Ohio St.3d 642, 646, 1992-Ohio-42,597 N.E.2d 504. In this regard, we note that the complaint alleged that Routzahn was injured because Garrison operated the tractor in a negligent and/or reckless manner. Routzahn also alleged that he was riding on a platform which had been "negligently designed and built" by Garrison.
 {¶ 43} During his deposition, Routzahn stated that the platform was well-built and well-designed. He also insisted that Garrison was operating the tractor normally, was not speeding or driving recklessly, and did not do anything wrong. Finally, Routzahn said that he did not think Garrison was at fault for his injury. Although Routzahn later attempted to retract this refreshing bit of candor, the trial court refused to allow the testimony to be changed, because the pertinent portions of Routzahn's contradictory affidavit had been submitted in bad faith.
 {¶ 44} The outcome of this series of events is that the undisputed facts, elicited from Routzahn's own testimony, require judgment in Garrison's favor on the claims that were asserted. There was no evidence that Garrison negligently operated the tractor, nor was there any evidence that the platform was negligently designed or built. The trial court could have granted judgment on this basis alone, without even considering the application of the "open and obvious" doctrine. Since we may affirm a correct decision even if it is made for the wrong reasons, the judgment in favor of Garrison should be affirmed. See, e.g., O'Herron v. Tomson, Montgomery App. No. 19111,2002-Ohio-1796, ¶ 42, citing Joyce v. General Motors Corp.
(1990), 49 Ohio St.3d 93, 551 N.E.2d 172. Based on the preceding discussion, the first assignment of error is without merit and is overruled.
 II {¶ 45} The second and third assignments of error are based on Routzahn's alleged status as an "employee" or independent contractor. In this regard, the second assignment of error states that Garrison owed Routzahn a duty of care because a property owner's active participation in performing an independent contractor's work creates a duty of care even where a dangerous condition exists.
 {¶ 46} Garrison has responded to this argument by noting that issues relating to Routzahn's employment status were waived because they were not raised below. Routzahn argues, however, that waiver only applies to issues parties are aware of before judgment. Routzahn points out that Garrison did not rely on the "open and obvious" doctrine in his motion for summary judgment, but focused instead on the lack of evidence that Garrison had negligently breached his duty of care. Because Garrison had conceded that he did, in fact, have a duty of care, Routzahn did not see a need to discuss his status as an employee.
 {¶ 47} According to Routzahn, it was only after the trial court relied on the "open and obvious" doctrine in its decision that the issue of Routzahn's employment status became relevant. The matter obviously could not have been raised at that point, since the court had already filed its decision.
 {¶ 48} For the sake of argument, we will assume that the issue of Routzahn's employment status has not been waived. We note that if Routzahn had actually been Garrison's "employee," his recourse for a job-related injury would have been either a workers' compensation claim or a common-law claim for intentional tort, or both. Page v. Taylor Lumber, Inc. 161 Ohio App.3d 644,649, 2005-Ohio-3104, 831 N.E.2d 1017, at ¶ 11, citingBlankenship v. Cincinnati Milacron Chem., Inc. (1982),69 Ohio St.2d 608, 433 N.E.2d 572. The record does not indicate that Routzahn made a workers' compensation claim, nor is there an intentional tort claim in the complaint. Consequently, we must conclude that Routzahn did not consider himself an employee. If Routzahn had considered himself an employee, the complaint would have contained some reference to that fact.
 {¶ 49} The other alternative is that Routzahn was an independent contractor. In such situations, the applicable rule is that owners of premises do not generally owe a duty to independent contractors, even where the work being performed is inherently dangerous. An exception exists where the owner of the premises "actively participates" in the work. Evans v. DaytonPower and Light Co., Adams App. No. 03CA763, 2004-Ohio-2183, at ¶ 28, citing Hirschbach v. Cincinnati Gas Elec. Co. (1983),6 Ohio St.3d 206, 452 N.E.2d 326, syllabus.
 {¶ 50} An example of such a situation occurred where an independent contractor received a massive electric shock while painting steel structures on a transmission station though which high voltage flowed. See Sopkovich v. Ohio Edison Co.,81 Ohio St.3d 628, 629-30, 1998-Ohio-341, 693 N.E.2d 233. Because the owner of the substation (Ohio Edison) retained exclusive control over deciding which circuits or lines would be de-energized during this inherently dangerous work, the Ohio Supreme Court held that Ohio Edison had a duty toward the injured party.81 Ohio St.3d at 643-44. In the present case, Garrison did "actively participate" in the farm work. However, the work was basic farm labor and was not inherently dangerous. See, e.g., Thrower v.Ohio Dept. of Rehab. Corr., Ct. Claims No. 2000-08656, 2002-Ohio-6251, at ¶ 28 (holding that individual performing basic farm labor was not exposed to special risk). If there are instances where farm work involves danger, there was certainly no evidence of that in the present case.
 {¶ 51} As a further matter, Routzahn was not even performing any work at the time of his injury; he was simply riding back from the field to eat dinner. There was nothing inherently dangerous about this activity. Accordingly, even if we assume that Routzahn was an independent contractor, the facts of this case do not fit within the exception to the general lack of duty that is owed to independent contractors.
 {¶ 52} In the third assignment of error, Routzahn claims that the open and obvious doctrine does not apply where the danger must be encountered in the normal performance of a worker's required duties. As support for this point, Routzahn relies onCremeans v. Willmar Henderson Mfg. Co., a Div. of Waycrosse,Inc. (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, which held that:
 {¶ 53} "[a]n employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities." Id. at syllabus.
 {¶ 54} In Cremeans, a manufacturer sold a front-loader without a protective cage. This was done at the purchaser's request because the cage prevented the front-loader from being driven into the purchaser's fertilizer bins.57 Ohio St.3d at 146. An employee of the purchaser was subsequently injured when he drove the front-loader into a bin and an avalanche occurred. When the employee brought a products liability action against the manufacturer, the Ohio Supreme Court rejected the application of assumption of the risk for work-related injuries. The court reasoned that employees often do not have a choice about encountering certain risks when they perform normal job duties. Id. at 149-50.
 {¶ 55} Routzahn argues that we should apply the same principle here. As an initial matter, we note that appellate courts have refused to apply Cremeans to situations involving independent contractors. See Snider v. Clermont Central SoccerAssn. (Mar. 22, 1999), Clermont App. No. CA98-07-056, 1999 WL 160954, *4, and Evanoff v. Ohio Edison Co. (Nov. 10, 1994), Portage App. No. 93-P-0015, 1994 WL 652635, *7. As the Twelfth District Court of Appeals noted in Snider, "unlike an employee, an independent contractor has the right to choose the method in which the work will be performed." 1999 WL 150954, at *4. The Third District Court of Appeals also refused to extend Cremeans
to the open and obvious doctrine, since the Ohio Supreme Court had recently reaffirmed the validity of that doctrine in theArmstrong case. Brown v. Whirlpool Corp., Marion App. No. 9-04-12, 2004-Ohio-4101, at ¶ 19.
 {¶ 56} We agree with these points, and reject the application of Cremeans to the present situation. As we have already noted, Routzahn's role, at most, was that of an independent contractor. Consequently, Routzahn had the right to choose the manner in which his work was performed.
 {¶ 57} More importantly, the factual situation in this case is quite different from Cremeans. Routzahn was not required to ride on the platform as a "condition" of employment, nor was he riding on the platform as part of his duties. Instead, Routzahn rode back to the barn for his own convenience, rather than walking. We, therefore, do not need to apply a theory that relies on an employee's lack of choice about performing dangerous tasks.
 {¶ 58} Based on the preceding discussion, the second and third assignments of error are without merit and are overruled.
 III. {¶ 59} In the final assignment of error, Routzahn claims that the trial court erred by converting his common law negligent design claim into a products liability action under R.C. 2307.71. Again, we disagree.
 {¶ 60} Routzahn alleged in the complaint that Garrison had negligently designed the platform on the tractor. However, Routzahn did not specify whether his action was brought under R.C. 2307.71 or as a common law negligent design claim. The trial court concluded, after referring to the definitions of manufacturer and supplier under R.C. 2307.71, that Garrison was not the type of individual contemplated by the products liability statutes. Routzahn contends this was error, because his claims are covered by the common law of negligent design.
 {¶ 61} Although the General Assembly eliminated common law product liability causes of action effective April 7, 2005, a common law action for negligent design was still allowed at the time of Routzahn's injury in 2002. See Carrel v. Allied ProductsCorp. (1997), 78 Ohio St.3d 284, 1997-Ohio-12, 677 N.E.2d 795, paragraph one of the syllabus (allowing common law negligent design action), and R.C. 2307.71(B) (abrogating the result inCarrel as of April 7, 2005). Under the common law,
 {¶ 62} "a product is defective in design `if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or if the benefits of the challenged design do not outweigh the risk inherent in such design.' * * * Moreover, a product may be defective in design if the manufacturer fails to incorporate feasible safety features to prevent foreseeable injuries." State Farm Mut. Auto. Ins. Co. v.Kia Motors Am., Inc., 160 Ohio App.3d 727, 2005-Ohio-2222,828 N.E.2d 701, at ¶ 25 (citations omitted).
 {¶ 63} The facts of the present case do not satisfy the requirements for a defective design claim, because Routzahn was not a "consumer" with regard to the platform, and Garrison was not a "manufacturer" of the platform, as these words are typically used in the law. For example, a consumer is defined under the Consumer Sales Protection Act as "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). Similarly, R.C. 5741.01(F) defines a consumer as "any person who has purchased tangible personal property or has been provided a service for storage, use, or other consumption or benefit in this state. `Consumer' does not include a person who receives, without charge, tangible personal property or a service."
 {¶ 64} Under the common law, a manufacturer was clearly contemplated to be someone who designs or makes products for public consumption or sale. For example, in Burkhard v. Short
(1971), 28 Ohio App.2d 141, 275 N.E.2d 632, the court referred to the Restatement of Torts when considering the liability of General Motors Corporation for negligently designing a dashboard. The court noted that:
 {¶ 65} "[i]n the Restatement of the Law by the American Law Institute, Torts 2d., Section 398, Chattel Made Under Dangerous Plan or Design, the general rule is stated: `A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others * * *.' Section 402A, relating to special liability of the seller of a product, applicable to a manufacturer also, states as follows:
 {¶ 66} `(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer * * *.'"
 {¶ 67} The statutory scheme for products liability carries this common law intent forward, by defining a manufacturer as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." R.C. § 2307.71 (A)(9).
 {¶ 68} Although the trial court did not discuss the common law elements of negligent design, the court's analysis was completely consistent with the requirements for such claims. Furthermore, the court did not need to consider the elements in detail, because the court found that Garrison was not the type of individual contemplated by products liability statutes, i.e., he was not in the business of selling platforms. We agree with this conclusion. Garrison was not a manufacturer or supplier of products, and there was no basis for a products liability claim, whether brought under the statutes or under pre-existing common law. An individual in Garrison's position might be sued under a simple negligence theory, for improperly constructing a platform for his own use, or for removing the guardrails and creating a risk of harm, but not for "negligent design" as that term is used in the products liability area. Accordingly, even though the trial court referred to R.C. 2307.71, rather than the common law, the court's conclusion was correct.
 {¶ 69} Based on the preceding discussion, the fourth assignment of error is without merit and is overruled.
 {¶ 70} Because all four assignments of error have been overruled, the judgment of the trial court is affirmed.
Donovan, J., concurs.