OPINION
{¶ 1} Albert Lacey appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to Sports Award, Inc., Boston's Bistro Pub, Stephen Boston, and David Boston (collectively, "Boston"), as well as Finch Rental and Russell Finch (collectively, "Finch"), on Lacey's negligence claims.
 {¶ 2} The events giving rise to this action are largely undisputed.
 {¶ 3} On July 12, 2003, Boston's Bistro Pub sponsored a Hungarian Festival in the vicinity of 101 East Second Street in Dayton, Ohio, which was the location of the business. In preparation for the festival, Boston rented certain items from Finch Rental. Among those items was a 12-foot by 12-foot stage, which was 24 inches high. Boston could have but did not rent steps to assist with climbing onto the stage.
 {¶ 4} As part of the festival, David Boston, principal of Sports Award, Inc., dba Boston's Bistro Pub, hired musicians to perform. Lacey was a string bass musician whose band was hired to play at the Hungarian Festival. Lacey and his band traveled from Chicago, Illinois, to perform. At that time, Lacey was 82 years old.
 {¶ 5} After arriving at the festival, an individual working for the festival assisted Lacey by placing his string bass on the stage for him. Lacey then proceeded to Boston's Bistro Pub to change his clothes. Upon returning to the stage, Lacey observed that the other musicians were already on stage. Lacey observed that the stage was high. Consequently, Lacey looked around for stairs or steps onto the stage. He also asked the individual who had helped him with his instrument if there were steps. The individual responded by shrugging his shoulders.
 {¶ 6} Lacey apparently decided to climb onto the stage himself. Tony Belig, a fellow member of the band, offered his hand to assist Lacey. Lacey grabbed Belig's hand with his right hand and attempted to step up onto the stage. In doing so, he slipped and fell, injuring his left leg.
 {¶ 7} On June 23, 2004, Lacey brought suit against Sports Award, Boston's Bistro Pub, Stephen Boston, David Boston, Finch Rental and Russell Finch, alleging negligence. He asserted that Boston breached its duty to maintain the stage in a safe manner. He further alleged that Finch "leased a stage which was not safe for its immediate use" and that Boston negligently failed to rent the steps that were necessary for safe movement on and off the stage. Lacey also alleged that Boston and Finch negligently maintained a hazardous condition by permitting a stage in excess of twenty inches in height to be erected without steps, in violation of the building code.
 {¶ 8} In June 2005, Boston and Finch filed motions for summary judgment. On October 27, 2005, the trial court granted the defendants' motions. Initially, the court addressed Lacey's contention that the absence of steps onto the stage violated the Ohio Basic Building Code, Ohio Admin. Code 4101:1-10-07 and 1-10-03.3. Citing Olivier v. Leaf and Vine, Miami App. No. 04-CA-45, 2005-Ohio-1910, the trial court noted that the existence of a building code violation, if open and obvious, would "obviate the duty to warn." The court thus found that a building code violation would not preclude summary judgment for the defendants.
 {¶ 9} Next, the court addressed whether Russell Finch, Stephen Boston, and David Boston could be held individually liable for the alleged negligence of Finch Rental, Sports Award, and Boston Bistro Pub, respectively. Finding no evidence to support piercing the corporate veil, the court granted summary judgment to those defendants.
 {¶ 10} With regard to Finch Rental, Sports Award, and Boston Bistro Pub, Lacey had argued that R.C. 4101.11 imposed a duty "to furnish and use safety devices and safeguards * * * and do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." Lacey had further argued that Finch Rental owed him and breached a duty of care. In granting summary judgment to the companies, the court found that their duties were "obviated by the open and obvious nature of the hazard." It found "the hazard (no steps or stairs) associated with the two foot elevated stage to be an open and obvious hazard." The court noted that the factual circumstances were "strikingly similar" to Olivier, in which we affirmed summary judgment in favor a restaurant under the open and obvious doctrine, stating that the plaintiff was necessarily on notice of the height of the single step to the raised seating area because she could not have taken her seat and eaten in that area without successfully stepping onto the platform.
 {¶ 11} Lacey raises three assignments of error on appeal, which we will address in an order that facilitates our analysis.
 {¶ 12} II. "THE TRIAL COURT ERRED AS A MATTER OF LAW [BY HOLDING] THAT THE OPEN AND OBVIOUS DOCTRINE APPLIED AS A DEFENSE TO APPELLEES SPORTS AWARD, INC. AND BOSTON'S BISTRO AND PUB, WHEN APPELLANT, ALBERT LACEY, WAS NOT PROVIDED A SAFE PLACE TO WORK AND WAS REQUIRED TO UNSAFELY ASCEND A STAGE TWO FEET HIGH, WITHOUT STEPS TO PERFORM HIS JOB."
 {¶ 13} III. "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO CONSTRUE THE EVIDENCE MOST FAVORABLY TO APPELLANT WHEN THE COURT HELD THAT APPELLANT ASSUMED THE RISK OF AN OPEN AND OBVIOUS DANGER THUS GRANTING SUMMARY JUDGMENT."
 {¶ 14} In his second assignment of error, Lacey claims that the open and obvious doctrine was inapplicable to the circumstances and, alternatively, that genuine issues of material fact should have precluded summary judgment. In his third assignment of error, Lacey contends that the trial court inappropriately weighed the evidence and found that he had assumed the risk of the hazard.
 {¶ 15} First, Lacey argues that, as an individual who was hired by Boston to perform on the stage, he was a frequenter within the meaning of R.C. 4101.11 and, thus, Boston had a duty to provide him with a safe work environment. He asserts that the open and obvious doctrine is inapplicable "when workers in an employment circumstance are placed in a dangerous situation and they use reasonable means to attempt to circumvent same."
 {¶ 16} "In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." Gladon v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 312, 315,662 N.E.2d 287. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id.; McManes v. KorGroup, Montgomery App. No. 19550, 2003-Ohio-1763, at ¶ 37. With regard to invitees, a landowner has a duty to exercise ordinary care in maintaining its premises in a reasonably safe condition in order to insure that the invitee is not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy,Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474; Light v. OhioUniv. (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611; Kidder v.The Kroger Co., Montgomery App. No. 20405, 2004-Ohio-4261, at ¶7. Although a business is not an insurer of its invitees' safety, it must warn them of latent or concealed dangers if it knows or has reason to know of the hidden dangers. Jackson v. KingsIsland (1979), 58 Ohio St.2d 357, 359, 390 N.E.2d 810.
 {¶ 17} R.C. 4101.11, known as the frequenter statute, provides:
 {¶ 18} "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and forfrequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." (Emphasis added.)
 {¶ 19} The Supreme Court of Ohio has made clear that the duty owed to frequenters "is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." Eicher v. United States Steel Corp. (1987),32 Ohio St.3d 248, 249, 512 N.E.2d 1165.
 {¶ 20} "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." Adelman v. Timman (1997),117 Ohio App.3d 544, 549, 690 N.E.2d 1332. A business has no duty to protect an invitee from dangers "[that] are known to such invitee or are so obvious and apparent to such invitee that [s]he may reasonably be expected to discover them and protect [her]self against them."Paschal, supra; Kidder at ¶ 7. "`The rationale behind the [open-and-obvious] doctrine is that the open-and-obvious nature of the hazard itself serves as a warning.' The open-and-obvious doctrine concerns the first element of negligence, whether a duty exists. Therefore, the open-and-obvious doctrine obviates any duty to warn of an obvious hazard and bars negligence claims for injuries related to the hazard." Henry v. Dollar General Store,
Greene App. No. 2002-CA-47, 2003-Ohio-206, at ¶ 7. The supreme court reaffirmed the viability of the open and obvious doctrine in Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088.
 {¶ 21} As a corollary to the open and obvious doctrine, we have recognized that there may be attendant circumstances which divert the individual's attention from that hazard and excuse his failure to observe it. Henry, supra; Quinn v. MontgomeryCounty Educ. Serv. Ctr., Montgomery App. No. 20596,2005-Ohio-808, ¶ 23. Thus, the particular facts and circumstances must be examined to determine whether a hazard is open and obvious. Id.
 {¶ 22} In the present case, upon construing the evidence in the light most favorable to Lacey, it is apparent that the alleged dangerous condition — the lack of steps or stairs onto the stage — was open and obvious. According to Lacey's deposition testimony, Lacey and two other band members had arrived from Chicago at approximately 1:30 p.m. and were to perform starting at approximately 2:00 p.m. Prior to attempting to climb onto the stage, Lacey had looked around the stage for steps or stairs and found that none were present. He also stated that he observed that there were no ladders or railings. There is no evidence that any steps existed or that there were attendant circumstances that prevented him from discovering any steps or the non-existence of steps. Accordingly, based on the evidence, it is clear that Lacey was aware that the stage had no steps or stairs prior to his attempt to step onto the stage.
 {¶ 23} Lacey argues, in effect, that an independent contractor hired by the business should be treated differently than other business invitees, such as patrons or customers as inOlivier. In general, owners of premises do not owe a duty of protection to independent contractors, even where the work being performed is inherently dangerous. Routzahn v. Garrison,
Montgomery App. No. 21190, 2006-Ohio-3652, ¶ 49.[1] The exception arises where the owner of the premises "actively participates" in the work and fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated. Id.;Myers v. Charles Simms Dev. Corp., Montgomery App. No. 192814, 2002-Ohio-7289, ¶ 11. "[A]ctive participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace."Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628, 643,693 N.E.2d 233.
 {¶ 24} Lacey contends that Boston owed him a duty to provide a safe working environment because Boston "actively participated" in the job. Lacey cites to the deposition testimony of David Boston, in which he testified that he was the "originator" of the Hungarian Festival. As part of his organization of the event, he entered into an oral agreement with George Botney whereby Botney would provide five musicians to play Hungarian music. In return, Boston paid the musicians a certain sum and agreed to provide a stage and shelter, sound equipment, housing, food, and beverages.
 {¶ 25} The record contains no evidence showing that Boston participated in the actual work activities of Lacey or the other band members. Although David Boston's deposition testimony establishes that he actively organized the Hungarian Festival and arranged for musicians, there is no evidence that Boston directed the band's activities throughout the festival. Boston's general supervisory role over the event does not rise to the level of actual participation in the band's work activities.
 {¶ 26} Likewise, we do not find that Boston exercised control over a critical aspect of the work environment such that it arises to "active participation." In Sopkovich, the plaintiff, an independent contractor, was severely injured when he came into contact with high voltage electricity while painting an electric substation owned and operated by Ohio Edison. The supreme court found that genuine issues of material fact precluded summary judgment in favor of Ohio Edison when the company retained and exercised exclusive control over the de-activation of specific electrical conductors in the work area.
 {¶ 27} Unlike Sopkovich, there is no evidence that Boston retained or exercised exclusive control over the use of the stage. His activities with regard to the stage were limited to renting the structure from Finch and having the stage erected by the rental company. Once the stage was erected, there is no evidence that Boston controlled how individuals were to climb onto the stage. Rather, Lacey testified that other than meeting Boston briefly upon arriving at the festival, Boston was busy with other festival concerns. Lacey was neither required to climb onto the stage without steps nor was he prohibited from finding another means of climbing on the stage. Therefore, Boston did not actively participate in the work, as set forth in Sopkovich,
and he had no duty with respect to Lacey as an independent contractor.
 {¶ 28} Finally, Lacey contends that the open and obvious doctrine "becomes irrelevant when workers in an employment circumstance are placed in a dangerous situation and they use reasonable means to attempt to circumvent same." Citing Cremeansv. Willmar Henderson Mfg. Co. (1991), 57 Ohio St.3d 145,566 N.E.2d 1203, and cases that follow it, Lacey argues that he did not voluntarily or unreasonably assume the risk of injury when he attempted to climb the stage.
 {¶ 29} We recently noted that appellate courts have refused to apply Cremeans to situations involving independent contractors. Routzahn at ¶ 55. Moreover, we noted that the "Third District Court of Appeals also refused to extendCremeans to the open and obvious doctrine, since the Ohio Supreme Court had recently reaffirmed the validity of that doctrine in the Armstrong case." Id., citing Brown v.Whirlpool Corp., Marion App. No. 9-04-12, 2004-Ohio-4101, at ¶19. We agreed with these points and rejected the application ofCremeans to a situation involving an independent contractor. Id. at ¶ 56.
 {¶ 30} Other courts have also applied the open and obvious doctrine where an independent contractor attempted to "circumvent" an obvious danger. In Maras v. Goodyear Tire Rubber Co. (May 23, 1996), Cuyahoga App. No. 69471, which Lacey cites, the plaintiff was hired to clean the porcelain sections of an outdoor, rooftop Goodyear sign. The plaintiff had been instructed on how to gain access to the roof. The procedure involved climbing an interior stairwell into a rooftop boiler room where an aluminum ladder was stored that would be needed to ascend to a second, higher level of the roof where the sign was located. Maras was also instructed to tie open the double doors that led out of the boiler room onto the lower level of the roof since the doors self-locked from the inside. Failure to properly tie open the doors could result in one being locked out on the roof. On the day of the plaintiff's injury, he noticed that someone had removed the ladder. After unsuccessfully trying to attract someone's attention for approximately an hour, he hang-dropped to the first level roof. Upon noticing that the double doors had been closed, he again tried to attract someone's attention for more than an hour. When he was again unsuccessful, he hang-dropped from the roof to a small roof over the employee entrance. When the plaintiff tried to hang-drop from that roof to the ground below, he suffered a severely broken ankle. On review, the Eighth District affirmed summary judgment for the defendants. The court stated: "[P]laintiff-appellant was not injured while working on the Goodyear sign but rather was injured as a result of a conscious decision on his part to attempt to hang-drop from the roof down to the ground, despite the open and obvious nature of the dangers involved." Id.
 {¶ 31} In the present case, we find no merit to Lacey's assertion that the open and obvious doctrine should not apply, despite the facts that he was an independent contractor and he had no means provided by Boston to ascend to the stage. Upon arriving at the site of Hungarian Festival, Lacey became aware that there were no steps onto the two-foot-high stage. Boston was under no duty to warn him of the danger of attempting to climb onto the stage, and Lacey was aware of the danger of falling when he attempted to step up onto the performing area. Therefore, the open and obvious doctrine obviated any duty Boston had to warn of an obvious hazard and Lacey's negligence claims for injuries related to the hazard must fail. Henry, supra.
 {¶ 32} The second and third assignments of error are overruled.
 {¶ 33} I. "TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT THE OPEN AND OBVIOUS DOCTRINE WAS APPLICABLE AS A DEFENSE TO APPELLEE, FINCH RENTAL, INC., BECAUSE APPELLEE IS AN EQUIPMENT RENTAL COMPANY AND NOT THE OWNER OR OCCUPIER OF LAND."
 {¶ 34} In his first assignment of error, Lacey claims that the trial court erred in applying the open and obvious doctrine to his claims against Finch. Lacey argues that, because Finch was not an owner or occupier of the land, Finch could not avail itself of the open and obvious defense. Lacey further argues that Finch had a duty to provide renters of its equipment with safety components and safety instructional manuals necessary for the correct erection of rental equipment.
 {¶ 35} Lacey correctly asserts that the open and obvious doctrine is directed to the duty owed by a landowner and it is not applicable to Finch, who neither owned nor occupied the location where the stage was erected. In Simmers v. BentleyConstr. Co. (1992), 64 Ohio St.3d 642, 597 N.E.2d 504, the Supreme Court of Ohio declined to extend the open and obvious doctrine "to persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises." In that case, the supreme court declined to apply the open and obvious doctrine to an independent contractor who was performing services for the owner of a bridge. The court held that "an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." Id. at 645. The court indicated that the independent contractor's duty would be determined under the law of negligence. Id. Accordingly, under Simmers, the open and obvious doctrine is inapplicable to Finch, who did not own or occupy the site of Hungarian Festival.
 {¶ 36} Lacey next contends that Finch had a duty to provide steps up to the stage. In support of his assertion, Lacey cites to Goodwin v. Bluffton College, Allen App. No. 1-03-37,2004-Ohio-2223. In Goodwin, scaffolding that had been rented and erected by a college without using base plates and mud sills collapsed, injuring several students. The Third District found that the rental business that had rented the scaffolding to the college had a duty "to provide scaffolding renters with safety instructional manuals and the safety components necessary for the proper erection of the scaffolding." The court noted that the company had been advised by the scaffolding manufacturer to give safety instructional materials to renters. In addition, the appellate court stated that it should have been foreseeable to the rental company that the college would erect the scaffolding without base plates and muds sills when, despite warning stickers placed on the scaffolding frames by the manufacturer that advised the use of base plates and mud sills when installing the scaffold units, none were supplied by the rental company.
 {¶ 37} We find Goodwin to be distinguishable. Initially, we note that the Third District found that the rental company had a duty to provide safety materials because "the evidence in the record [was] sufficient to create" such a duty. The court held that the duty existed because it was reasonably foreseeable that the failure to provide such items would result in the improper erection and possible collapse of the scaffolding unit. Here, Finch did not fail to provide items to ensure that the 12-foot by 12-foot stage, which was rented by Boston, would be properly erected. There is no claim that the stage itself was improperly assembled or hazardous. Moreover, unlike in Goodwin, we do not find that the evidence supports a finding that it was reasonably foreseeable to the rental company that an injury climbing onto the stage would occur if steps were not provided in conjunction with the stage. In our view, Finch's duty in renting a stage to Boston was limited to providing a stage that was not hazardous. That duty did not extend to providing a safe means of ascending onto the stage.
 {¶ 38} Although the trial court erroneously granted summary judgment to Finch pursuant to the open and obvious doctrine, it was correct in granting summary judgment to Finch. "A summary judgment based on a legally erroneous analysis of the issues must be affirmed if the appellate court independently determines that upon the record summary judgment should have been rendered as a matter of law, albeit for different reasons." Phillips v. DaytonPower Light Co. (1994), 93 Ohio App.3d 111, 115,637 N.E.2d 963.
 {¶ 39} The first assignment of error is overruled.
 {¶ 40} The judgment of the trial court will be affirmed.
Brogan, J. and Valen, J., concur.
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] We note that if Lacey had been an employee of Boston, his recourse for his injury would have been either a workers' compensation claim or a common-law claim for intentional tort, or both. Routzahn at ¶ 48.