OPINION
{¶ 1} Plaintiff-appellant, Dennis Wainscott, appeals a decision by the Butler County Court of Common Pleas granting a motion for summary judgment in favor of defendant-appellee, Americare Communities Anderson Development, LLC dba Willow Knoll Retirement Community ("Willow Knoll").[1] We affirm the decision of the trial court. *Page 2 
 {¶ 2} On February 24, 2005, appellant was working as a delivery driver for Life Line Co., a provider of pharmaceuticals serving nursing homes and other health care institutions. One of the regular customers on appellant's delivery route was Willow Knoll, a nursing home owned by appellee, Americare Communities Anderson Development, LLC.
 {¶ 3} Appellant arrived at Willow Knoll with a pharmaceutical delivery shortly after midnight. He proceeded down a corridor to a nurses' station where he was met by Tia Allen, a licensed practical nurse (LPN) on duty at that time. Allen signed the documentation necessary to accept the delivery of pharmaceuticals. Appellant then inquired whether there were any pharmaceuticals or other items that needed to be returned to Life Line. Allen indicated that there were some "returns," and proceeded across the hall to unlock the door to the room where medications, including medications to be returned, were kept. Appellant followed Allen to the "med room" door and stood behind her as she opened it.
 {¶ 4} Although the deposition testimony differs, appellant and Allen entered the med room and appellant obtained two plastic "totes" filled with items to be returned to Life Line. Allen estimated that each tote was approximately two and one-half feet wide and 18 inches high.[2]
 {¶ 5} As he was leaving the med room, appellant tripped on a stack of boxes that had been placed in the hall against the wall near the med room doorway. The boxes were square and between 18 inches and 24 inches high. There is some dispute as to how many boxes were stacked along the wall, but it appears that they were all the same size and stacked two or three high. According to the deposition of LPN Lisa Webb, who was also on duty that night, the boxes contained "tube feed" and had been delivered that day. Webb stated that medical deliveries were sometimes stacked in the hall next to the med room door until the *Page 3 
staff had the opportunity to put the items inside.
 {¶ 6} As a result of his fall, appellant sustained a broken hip and was taken by ambulance to a nearby hospital.
 {¶ 7} On June 1, 2005, appellant filed a complaint against Willow Knoll claiming that Willow Knoll and its agents or representatives negligently created or permitted a hazardous condition to exist on the premises by placing or permitting placement of the boxes in the hallway, resulting in injury. An amended complaint was filed on July 7, 2005. Willow Knoll answered the amended complaint and, following discovery, moved for summary judgment. On November 8, 2006, the trial court granted summary judgment to Willow Knoll on the basis that the stacked boxes were an open and obvious hazard which appellant could reasonably have been expected to discover. Appellant filed this timely appeal on December 1, 2006 raising the following assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE."
 {¶ 9} An appellate court reviews a trial court's decision on summary judgment de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294. Accordingly, this court must evaluate, wholly independent of the trial court's determination, whether Willow Knoll's motion for summary judgment was properly granted. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in its favor. Zivich v.Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 1998-Ohio-389. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of the genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. If the moving party meets *Page 4 
its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.
 {¶ 10} To recover in a negligence action, the plaintiff has the burden of demonstrating that (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's injury.Simmers v. Bentley Const. Co., 64 Ohio St.3d 642, 1992-Ohio-42.
 {¶ 11} Appellant raises four arguments with respect to the assignment of error which will be addressed individually. First, appellant argues that summary judgment was not appropriate because the "attendant circumstances" of his fall create a genuine issue of material fact as to whether the stacked boxes were an open and obvious hazard.
 {¶ 12} "Attendant circumstances" are an exception to the open and obvious doctrine. McGuire v. Sears, Roebuck Co. (1996),118 Ohio App. 3d 194. The phrase refers to all circumstances surrounding an event, such as the time and place of the event and the environment or background of the event, but particularly to conditions normally existing that unreasonably increase the normal risk of a harmful result. Id.; Cash v. Cincinnati (1981), 66 Ohio St.2d 319; Comin v. Image Mart,Inc., Franklin App. No. 03AP-1284, 2004-Ohio-2840. This court has referred to attendant circumstances as "distractions that contribute to an injury by diverting the attention of the injured party and reducing] the degree of care an ordinary person would exercise at the time."Galinari v. Koop, Clermont App. No. CA2006-10-086, 2007-Ohio-4540, ¶ 21. An attendant circumstance must "direct the attention of the [injured party], significantly enhance the danger of the defect, and contribute to the [injury]." Id. (citation omitted).
 {¶ 13} In his brief, appellant presents a list of nine "attendant circumstances" which he claims create a genuine issue of material fact as to whether the boxes that caused his fall were open and obvious: *Page 5 
 {¶ 14} "(1) the coloration of the boxes was similar to the color of the floor upon which they were stacked;
 {¶ 15} "(2) the boxes were stacked directly against the wall and stood only a few feet high from the floor;
 {¶ 16} "(3) the cramped conditions of the supply room created a restricted exit space;
 {¶ 17} "(4) inadequate lighting;
 {¶ 18} "(5) the boxes may have protruded slightly inside the doorway;
 {¶ 19} "(6) Willow Knoll had a safety policy which advised against leaving boxes stacked in the hallway;
 {¶ 20} "(7) appellant's carrying of the totes inhibited his ability to see directly below him;
 {¶ 21} "(8) upon exiting the supply closet, a reasonably prudent person would need to be cognizant of employees and residents of the nursing home who could also be traveling in the halls;
 {¶ 22} "(9) Willow Knoll had notice of the hazard and neglected to remove the hazard or warn of its danger for a period of at least nine hours."
 {¶ 23} None of these circumstances constitute an abnormal condition which would unreasonably increase the normal risk of harmful result or reduce the degree of care that an ordinary person would exercise in a similar situation. McGuire; Comin. Most are factors that should be considered when determining whether the stacked boxes were open and obvious. In any event, the mere designation of any condition as an "attendant circumstance" does not create a genuine issue of material fact precluding summary judgment. Id.
 {¶ 24} Second, appellant argues that "the lighting of the premises was not open and obvious as a matter of law." The record shows that the lighting in the Willow Knoll facility at the time appellant tripped was reduced because it was nighttime and the residents were *Page 6 
sleeping in their rooms, some with doors open. In this reduced-lighting condition, approximately every other fluorescent light in the hallway remained lit. There was a bright light over the nurses' station across from the med room, and the light in the med room was on.
 {¶ 25} Although the lighting was reduced, the evidence shows that there was sufficient light to navigate the hallways in the area where the accident occurred without a flashlight, and that it was possible to easily distinguish shapes and other details. Appellant testified that he could see the med room door and the door frame from the nurses' station across the hall. LPN Tia Allen's deposition indicates that the area was "well lit."
 {¶ 26} As a preliminary matter, this court disagrees with appellant's assertion that the lighting of the premises was not "open and obvious." The lighting condition itself, whether dark, bright or otherwise, was a readily observable condition. Swonger v. Middlefield Village Apts., Geauga App. No. 2003-G-2547, 2005-Ohio-941. The question is whether the lighting creates a genuine issue of material fact as to whether the stacked boxes were an open and obvious hazard. The record reveals no significant dispute with respect to the level of lighting; although it was reduced as compared to daytime hours, it was sufficient to navigate the area in question and discern doorways, walls and objects. As noted by the trial court, the Ohio Supreme Court has indicated that darkness "is always a warning of danger, and for one's own protection * * * may not be disregarded." Jeswald v. Hutt (1968), 15 Ohio St.2d 224, paragraph three of the syllabus. See, also, Conver v. EKH Co., Franklin App. No. 02AP-1307, 2003-Ohio-5033.
 {¶ 27} Dim or reduced lighting is an open and obvious condition which should increase the degree of care that an ordinary person would exercise under the circumstances. It is not a circumstance which necessarily creates a genuine issue of material fact or precludes summary judgment. Jeswald; Conver; Haynes v. Mussiwir, Franklin App. Nos. 04AP-110, *Page 7 
04AP-117, 2005-Ohio-2428.
 {¶ 28} Appellant next argues that R.C. 4101.11, entitled "Duty of employer to protect employees and frequenters," supplants the "open and obvious" doctrine in this case because the statute imposes a duty upon Willow Knoll to keep its premises safe for employees and frequenters. Appellant claims the duty was breached because boxes were left in the hallway, an unsafe condition contrary to a safety policy. LPN Lisa Webb indicated in her deposition that Willow Knoll had a policy against leaving boxes in the hallways so people would not trip over them. She added that "we have lots of residents with walkers and things." In her deposition, LPN Tia Allen agreed that staff was not supposed to leave "random things out in the middle of the hallway * * * that an elderly person would fall over," but stated that she was not sure if there was an actual policy about this. Other than Webb's deposition testimony, the record contains no evidence of a Willow Knoll policy with respect to leaving items in the hallway.
 {¶ 29} R.C. 4101.11, also known as the "frequenter statute," provides in pertinent part as follows: "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." It is undisputed that appellant, as a delivery driver for Life Line, was a "frequenter" of the Willow Knoll premises.
 {¶ 30} Appellant essentially argues that even if the open and obvious doctrine precludes recovery at common law, Willow Knoll's violation of R.C. 4101.11 constitutes negligence per se. Appellant contends that Willow Knoll accordingly breached its duty of care with respect to him and summary judgment was improperly granted. In support of his argument that the duty imposed by R.C. 4101.11 prevails over the open and obvious *Page 8 
doctrine, appellant cites a line of cases which specifically address the obligation of landlords to keep rental property in good repair as required by R.C. 5321.04(A)(2). See Robinson v. Bates,112 Ohio St.3d 17, 2006-Ohio-6362; Harris v. Richmond Park Apts., Cuyahoga App. No. 84067, 2004-Ohio-4081; Crawford v. Wolfe, Scioto App. No. 01CA2811, 2002-Ohio-6163. All of these cases involve a specific statute, R.C.5321.04(A)(2), which places an affirmative duty upon landlords to keep rental property in good repair and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.
 {¶ 31} However, the Supreme Court of Ohio has made clear that the duty owed to frequenters pursuant to R.C. 4101.11 "is no more than a codification of the common-law duty owed by an owner or occupier of the premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." Eicher v. United States Steel Corp. (1987),32 Ohio St.3d 248, 249. See, also, Debie v. Cochran Pharmacy-Berwick, Inc.
(1967), 11 Ohio St.2d 38; Lacey v. Sports Award, Inc., Montgomery App. No. 21346, 2006-Ohio-4401.
 {¶ 32} At common law, a business has no duty to protect an invitee from dangers known to the invitee, or which are so obvious and apparent to the invitee that he or she may reasonably be expected to discover them and protect himself or herself against them. Paschal v. Rite AidPharmacy, Inc. (1985), 18 Ohio St.3d 203; Kidder v. The Kroger Co., Montgomery App. No. 20405, 2004-Ohio-4261. The rationale behind this "open and obvious" doctrine is that the open and obvious nature of the hazard itself serves as a warning. The Supreme Court recently reaffirmed the viability of the open and obvious doctrine in Armstrong v. Best BuyCo., Inc., 99 Ohio St.3d 79, 2003-Ohio-2573.
 {¶ 33} The Supreme Court has explicitly stated that the duty owed to frequenters pursuant to R.C. 4101.11 is no more than the codification of common-law duty owed by an owner or occupier of premises to invitees.Eicher. The line of cases finding that a landlord's *Page 9 
duty to keep premises in good repair prevails over the open and obvious doctrine involve a specific statute and a specific duty. Absent a similar situation, the Supreme Court has indicated that liability imposed by statute will not be extended beyond the clear import of the terms of the statute, and that courts should not presume that a statute was intended to abrogate common law. Any intention to abrogate or dismantle a long-standing rule of common law "must be expressly declared by the legislature or necessarily implied by the language of the statute." LaCourse v. Fleitz(1987), 28 Ohio St.3d 209, 212 (Supreme Court declined to abrogate open and obvious doctrine as to landlord's duty to remove natural accumulations of ice and snow). See, also,Schoefield v. Beulah Road, Inc. (Aug. 26, 1999), Franklin App. No. 98AP-1475.
 {¶ 34} We decline appellant's invitation to interpret the frequenter statute in a manner that would eclipse the open and obvious doctrine. We find, as did the Ohio Supreme Court in Eicher, that R.C. 4101.11 is no more than the codification of the general common law duty owed by an owner or occupier of premises to invitees.
 {¶ 35} The final two arguments posed by appellant assert that Willow Knoll breached a duty to appellant by failing to remove the boxes from the hall or warn appellant that they were there, and that this breach proximately caused appellant's injuries. The relevancy of both of these issues disappears if the boxes constituted an open and obvious condition. If so, Willow Knoll had no duty to warn or protect appellant against such condition. See, e.g., Sidle v. Humphrey (1968),13 Ohio St.2d 45.
 {¶ 36} After reviewing the entire record, this court concludes that the boxes were an open and obvious hazard which appellant could have reasonably been expected to discover and protect himself against. Appellant tripped and fell over boxes that were against the wall in stacks between two and three feet high. Each box was at least one foot square. Although the lighting in the hallway was reduced, there is no dispute that the lighting level was *Page 10 
sufficient to discern objects in the hall. Further, the evidence shows that a bright light was on at the nurses' station across the hall, and that the med room light was on at the time appellant tripped and fell. As mentioned above, reduced lighting is itself a warning of danger and should cause a reasonable person to pay even closer attention to his or her surroundings to avoid danger.
 {¶ 37} Appellant walked by the stacked boxes once as he approached the nurse's station, and they were more or less in front of him when he stood behind LPN Tia Allen as she opened the med room door. Although he stated that he never saw the boxes, "a dangerous condition does not actually have to be observed by the claimant to be an open and obvious condition under the law." Lykins v. Fun Spot Trampolines, et al., Clinton App. No. CA2006-05-018, 2007-Ohio-1800, ¶ 24 (citations omitted).
 {¶ 38} The record supports the trial court's determination that reasonable minds can only conclude that the condition of the hallway and the location of the boxes were open and obvious. Willow Knoll's motion for summary judgment was properly granted. The assignment of error is overruled, and the judgment of the trial court is affirmed.
WALSH and POWELL, JJ., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] It appears that a "tote" is roughly similar to a large plastic storage box one might purchase at a discount department store and use to stow household items such as toys, holiday decorations and off-season clothing. *Page 1