[Cite as *Goodman v. Orlando Baking Co.*, 2012-Ohio-1356.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97170

---

## MARK J. GOODMAN

PLAINTIFF-APPELLANT

vs.

## THE ORLANDO BAKING CO., ET AL.

DEFENDANTS-APPELLEES

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-732235

**BEFORE:** S. Gallagher, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEYS FOR APPELLANT**

Jonathan M. Ashton
Kevin J. Boissoneault
Gallon, Takacs, Boissoneault & Schaffer Co., LPA
3516 Granite Circle
Toledo, OH    43617


**ATTORNEYS FOR APPELLEES**

**For Orlando Baking Company**

Sean Allan
Allan & Gallagher, LLP
1300 The Rockefeller Building
614 West Superior Avenue
Cleveland, OH   44113

**For A&L Compaction Equipment Co., LLC**

Dawn E. Snyder
Brian T. Winchester
McNeal, Schick, Archibald & Biro Co.
Van Sweringen Arcade, Suite 250
123 West Prospect Avenue
Cleveland, OH   44115

SEAN C. GALLAGHER, J.:

{¶1} Appellant, Mark J. Goodman, appeals the judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of appellees, Orlando Baking Company ("Orlando") and A&L Compaction Equipment Co., LLC ("A&L"). For the reasons stated herein, we affirm.

{¶2} On July 21, 2010, Goodman filed a complaint against Orlando and A&L.[1] Goodman asserted claims for negligence arising from a knee injury he sustained on July 25, 2008. The injury occurred when he slipped on bakery waste while attempting to service a waste dumper and compactor unit ("dumper") at Orlando's facility in Cleveland.

{¶3} At the time of the incident, Goodman worked for Endres Processing, LLC ("Endres"), as a maintenance technician. The dumper being serviced was owned by Endres. Endres provides waste compactors and dumper units to bakeries in exchange for bakery waste. Endres would pick up the compactors and process the bakery waste into livestock feed.

{¶4} Orlando had three compactors and one dumper located at its facility. All servicing on the compactors and dumper unit was performed by Endres or a contractor

---

[1] The complaint named as defendants the following: The Orlando Baking Company, The Orlando Baking Company of Columbus, Inc., A&L Compaction Co., LLC, A&L Compaction Equipment Company, and John Doe numbers one through five. The Orlando defendants were treated and represented collectively as were the A&L defendants. Also, A&L indicates in its brief that it was improperly named in the complaint.

sent on its behalf. It was the responsibility of the sanitation department at Orlando to clean the dumper and the floor around it of any food waste.

{¶5} On or about July 14, 2008, Orlando was experiencing problems with its dumper. Richard Johnson, a service technician for A&L, repaired the dumper by welding a cracked bearing. Johnson indicated that the area was clean when he performed this repair. Endres was then billed by A&L for the service call. Johnson also testified that in his experience with working around bakery product, the nature of the product is slippery.

{¶6} Over a week later, on July 25, 2008, Goodman was dispatched by Endres to perform service work on the dumper at Orlando during normal business hours. Upon his arrival, Goodman proceeded through a "guard shack" and went to the dumper, which is located outside the bakery facility. He observed that the area around the dumper was a "big mess." He stated in his deposition that "[there was bread dough everywhere. The dumper was broke. Everything * * * was covered with bread dough, slippery, slimy. I had never seen it that bad." He also indicated that Orlando normally was pretty good about keeping the area clean, though it would not be unusual to have some dough around the machine.

{¶7} The dough was comprised of water, flour, yeast, salt, and sometimes oil. Goodman acknowledged that it was July and that dough rises when it sits in hot temperatures. He further indicated his knowledge that when bakery dough sits, "it's crusty on top, but you think you're okay, and you step on it, you don't know if there's oil

underneath it." However, he was aware that bakery dough could be slippery and, as he indicated, "you're always walking on edge. You're used to it."

{¶8} Goodman did not attempt to clean up the mess or request assistance from Orlando's sanitation department. Instead, he locked and tagged the dumper and proceeded to inspect it. While crawling over the power unit, Goodman's foot slipped and got caught, and his knee was injured. He proceeded to put new bearings on the machine and completed the repair work.

{¶9} After Goodman filed this lawsuit, Orlando and A&L filed motions for summary judgment. The trial court granted the motions without opinion. This appeal followed.

{¶10} Goodman raises two assignments of error for our review. His first assignment of error challenges the grant of summary judgment to Orlando.

{¶11} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that

> (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that

conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶12}** R.C. 4101.11, the "frequenter statute," sets forth the duty of an employer to protect employees and frequenters, and provides in pertinent part as follows:

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

**{¶13}** Additionally, R.C. 4101.12 sets forth the duty of an employer to furnish a safe place of employment, and provides in pertinent part as follows:

> No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe * * *. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.

**{¶14}** It is undisputed that Goodman was a frequenter at Orlando. The duty owed to a frequenter is akin to that of the common-law duty owed to an invitee:

> The duty owed to frequenters, i.e., including employees of other companies, is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of

which he has knowledge. *Eicher v. United States Steel Corp.*, 32 Ohio St.3d 248, 249, 512 N.E.2d 1165 (1987).

**{¶15}** At common law, a property owner has no duty to protect business invitees from dangers that are known to the invitee or are so obvious and apparent to the invitee that he may reasonably be expected to discover them and take appropriate measures to protect against them. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). The rationale behind the "open and obvious" doctrine is that the open and obvious nature of the hazard itself serves as a warning. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.* at ¶ 13. When applicable, "the open and obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Id.* at ¶ 5.

**{¶16}** Goodman argues that the open and obvious doctrine applies only to static conditions and does not apply in cases involving active negligence. As explained by one court:

> Premises tort claims where the alleged negligence arises from static or passive conditions, such as preexisting latent defects, are legally distinct from claims averring active negligence by act or omission. * * * The distinction between static and dynamic forms of negligence is legally

significant, because it directly correlates to the two separate and distinct duties an occupier owes its business invitees: (1) static conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, including an obligation to warn its invitees of latent or hidden dangers, while (2) active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises. *Simmons v. Am. Pacific Ents., L.L.C.*, 164 Ohio App.3d 763, 2005-Ohio-6957, 843 N.E.2d 1271, ¶ 20 (10th Dist.).

**{¶17}** Regardless of the original nature of the condition, it has been recognized that a condition may become static through a lapse of time. *Id.* at ¶ 22; *Sherlock v. Shelly Co.*, 10th Dist. No. 06AP-1303, 2007-Ohio-4522, ¶ 17-18; *Routzahn v. Garrison*, 2d Dist. No. 21190, 2006-Ohio-3652, ¶ 25.

**{¶18}** In the present case, there is no evidence to suggest that the conduct of Orlando actively created or changed the condition while Goodman was at the facility. In fact, the record reflects that no Orlando employees were present while Goodman was working on the dumper. Goodman estimated that he had been there for approximately one hour to one and one-half hours before the accident occurred. Thus, the bakery waste surrounding the dumper was a static condition and the open and obvious doctrine applies.

**{¶19}** Goodman further argues that he had no choice but to traverse the bakery waste in order to do his job. In support of his argument, he cites the case of *Mizenis v. Sands Motel, Inc.*, 50 Ohio App.2d 226, 362 N.E.2d 661 (6th Dist.1975). In *Mizenis*, the

court held that a hotel guest did not voluntarily assume the risk of navigating a stairway with melted snow and ice when he had unsuccessfully asked the motel manager to remedy the condition and the stairway was the only means to exit the premises. *Id.* at 230-232. Under these limited circumstances, in which no viable alternative was available, the court found the invitee could not reasonably be expected to protect himself against the danger. *Id.* at 230. *Mizenis* has been distinguished in cases in which the defendant is not faced with forced circumstances or fails to show no reasonable alternatives were available. *See Al-Sorghali v. Modene & Assoc., Inc.*, 6th Dist. No. L-06-1156, 2006-Ohio-4911, ¶ 19-20; *Jeffries v. U.S.*, N.D.Ohio No. 3:09CV00430, 2010 WL 1258008 (Mar. 30, 2010).

**{¶20}** Unlike the defendant in *Mizenis*, Goodman was not trapped inside a premises and he never sought assistance from Orlando in cleaning up the dangerous condition. Goodman conceded this alternative would have been a better course of action. Further, Goodman could have chosen not to perform repair work on the dumper until the area was cleaned. *See Routzahn*, 2d Dist. No. 21190, 2006-Ohio-3652, ¶ 55-56 (recognizing that an independent contractor has a right to choose the manner in which the work will be performed). Thus, Goodman was not faced with forced circumstances and there were reasonable alternatives available. Under these facts, reasonable minds could only conclude that Goodman voluntarily chose to encounter an open and obvious danger when he traversed the bakery waste.

**{¶21}** Goodman also asserts that bakery waste is not necessarily slippery and he could not see beneath it. However, the record reflects that the bakery waste was clearly

observable and Goodman was fully aware of its presence. Indeed, he described it as "a big mess" and described the dough as "slippery, slimy." Goodman was an experienced technician and had worked around bakery waste for a number of years. He was fully aware that the substance could be slippery. Because the nature of the condition was open and obvious, Goodman had a duty to protect himself against the associated dangers. *See Brown v. Whirlpool Corp.*, 3d Dist. No. 9-04-12, 2004-Ohio-5101, ¶ 13-15 (applying open and obvious doctrine to a frequenter who was aware of oil-like substance on the floor near a compactor unit); *Basar v. Steel Serv. Plus*, 8th Dist. No. 77091, 2000 WL 502875 (Apr. 27, 2000) (applying open and obvious doctrine to a frequenter who worked on scaffolding with knowledge that the floor was covered with "junk").

{¶22} Because the bakery waste was an open and obvious condition as a matter of law, the trial court properly granted summary judgment to Orlando. Accordingly, we overrule Goodman's first assignment of error.[2]

{¶23} Goodman's second assignment of error challenges the grant of summary judgment to A&L. Goodman argues that by welding the bearings rather than replacing them, A&L failed to properly repair the dumper and that this failure was a direct and proximate cause of the circumstances that led to his injury. He further asserts that A&L owed him a duty because his claims were foreseeable.

---

[2] We need not address the duty owed to an independent contractor performing inherently dangerous work.

{¶24} In order to establish a negligence claim, a plaintiff must prove three elements: (1) a legal duty on the part of the defendant; (2) the defendant's breach of that duty; and (3) an injury that is the proximate cause of that breach. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22. The existence of a duty depends upon the forseeability of the injury. *Id.* at ¶ 23. A duty is established when a reasonably prudent person would have anticipated that an injury was likely to result from a particular act. *Id.* Thus, "[o]nce the independent contractor has completed a project on property, the contractor's duty is set with respect to all who may be foreseeably injured due to the contractor's negligence." *Torchik v. Boyce*, 121 Ohio St.3d 440, 2009-Ohio-1248, 905 N.E.2d 179, ¶ 14.

{¶25} In this case, Johnson performed repair work on the dumper more than a week before Goodman was called to make a subsequent repair. Johnson testified that the area was clean when he serviced the dumper. He repaired the machine by welding a cracked bearing, which he testified was on the other side of the machine from where Goodman's fall occurred. Goodman testified that it is very hard to weld a bearing and get it to hold. However, he did not have any documentation or information to indicate that the work performed by A&L was not suitable. He further testified that the cause of his fall was "[s]lipping off of the tank on wet bakery dough that was piled up over it * * *."

{¶26} In this case, there was simply a lack of evidence to establish A&L's negligence or the foreseeability of Goodman's injury. There was insufficient evidence to

show that A&L failed to properly repair the machine. While Goodman suggests that replacing the bearing is the better course of action, there was a lack of evidence to show that welding a bearing is not an acceptable method of repair or that Johnson failed to exercise reasonable care in performing the repair work. Further, it was not foreseeable that someone would be injured in the course of subsequent repair work by proceeding to work around a machine that was covered in bakery waste. Therefore, we find the trial court properly granted summary judgment to A&L.[3]

**{¶27}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR

---

[3] We express no opinion on the assumption-of-risk issue.