[Cite as *Johnson v. Cleveland Metro. School Dist.*, 2025-Ohio-5852.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AALIYAH JOHNSON,                    :

    Plaintiff-Appellee,          :

                                 No. 114825

    v.                           :

CLEVELAND METROPOLITAN           :
SCHOOL DISTRICT, ET AL.,

    Defendants-Appellants.       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** December 31, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-985259

---

### *Appearances:*

Wilkerson and Associates Co., LPA, Ernest L. Wilkerson,
Jr., and Kathryn M. Miley, *for appellee.*

Consolo Law Firm Co., LPA and Frank Consolo, *for
appellants.*

LISA B. FORBES, P.J.:

{¶ 1} Cleveland Metropolitan School District ("CMSD" or "the School District") and Lisa Harris ("Harris") (collectively, "Appellants") bring this appeal of the trial court's decision concerning cross-motions for summary judgment on the

question of whether CMSD and Harris are immune from liability in connection with a lawsuit brought against them by Aaliyah Johnson ("Johnson"). The court denied Appellants' motion for summary judgment and granted in part and denied in part Johnson's motion. After a thorough review of the facts and the law, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.

## I. Procedural History and the Parties' Motions for Summary Judgment

{¶ 2} This case arises out of an incident that occurred at the Campus International High School ("CIHS") on December 8, 2022. It is undisputed that on that day, Johnson participated in a physical-education class taught by Harris in CIHS's Multi-Purpose Room ("MPR"). Johnson and other classmates played "circle volleyball." Twice, another student served a volleyball that struck a ceiling tile. After a ball hit the ceiling tile for a second time, the tile fell on Johnson's head.

### A. Procedural History

{¶ 3} Johnson sued both the School District and Harris for negligence in the Cuyahoga County Common Pleas Court. Appellants answered, raising the following affirmative defenses pertinent to this appeal: "CMSD Defendants are entitled to all immunities and defenses established in and provided by common law and/or R.C. Chapter 2744" and "any hazard or physical defect that existed was open and obvious."

**B. Johnson's Motion for Partial Summary Judgment**

{¶ 4} Johnson moved for partial summary judgment on October 11, 2024, asserting that Appellants are not immune from tort liability under R.C. Ch. 2744 — the Political Subdivision Tort Liability Act. In support of her motion, Johnson attached the following exhibits.[1]

### 1. Photos of Hanging and Fallen Tiles

{¶ 5} Johnson submitted her own affidavit, which incorporated several photos that she took using her phone. These photos are dated October 2022, before the tile fell on her. The photos appear to show tiles missing or hanging from the MPR ceiling and students holding fallen tiles.

### 2. Architect's Report

{¶ 6} Johnson submitted an affidavit of counsel, which incorporated the report and opinion of Richard Zimmerman ("Zimmerman"), an architect. Zimmerman found that — at 15-feet, 2-inches high — the MPR ceiling was "nearly 8 feet too low for appropriate and safe volleyball." This was based on USA Volleyball's recommendation that a court's ceiling be 23-feet high. Zimmerman also noted that "the ceiling system employed no hold-down clips for any acoustic ceiling tiles." Zimmerman concluded that volleyballs would frequently strike and dislodge the ceiling tiles in the MPR.

---

[1] Summary judgment exhibits that are not summarized in this opinion were not pertinent to our analysis of the issues raised on appeal.

### 3. Deposition of Brenda Ransaw

{¶ 7} Brenda Ransaw ("Ransaw") testified that she was responsible for replacing ceiling tiles in the MPR. She knew that students "playing ball" in the MPR had caused tiles to fall and was aware of that before a tile fell on Johnson. When ceiling tiles needed to be replaced, she contacted another employee who was "in charge of the lift" that was used when tiles were replaced. Ransaw said that this happened "[b]asically" every day.

### C. Appellants' Motion for Summary Judgment

{¶ 8} Appellants moved for summary judgment on October 15, 2024, arguing that CMSD and Harris are statutorily immune from liability, attaching the following.

### 1. Deposition of Andre Rudolph

{¶ 9} Andre Rudolph ("Rudolph") testified that he shared an office with CIHS Principal James Reed ("Principal Reed") and that, prior to this incident, he had not been aware that tiles had been displaced from the MPR ceiling. Rudolph testified that Harris had asked about relocating her gym class to Cleveland State University's recreation center because it had "more resources." For lack of transportation, this never happened. Rudolph helped Johnson get an ice pack after she told him that a tile hit her.

### 2. Deposition of Johnson

{¶ 10} Johnson testified that, on December 8, 2022, she was playing volleyball in the MPR. "[S]omeone had hit the ball up on the ceiling, and people

were calling my name . . . and then the ceiling tile just fell on my head." She did not see the volleyball strike the ceiling tile. Afterwards, Johnson "felt dizzy and wobbly."

### D. Deposition of Harris[2]

{¶ 11} Harris testified that she was a substitute teacher at CIHS. Principal Reed interviewed Harris for her teaching assignment. He told her during the interview that she would teach gym classes in the MPR. Harris testified that the MPR was smaller than a standard gymnasium, with a lower ceiling.

{¶ 12} According to Harris, "[a]bout 50 students" were enrolled in her physical-education class, but additional students sometimes snuck in. She felt that "it wasn't the safest" for one teacher "trying to teach over 60 students and keep them engaged and keep an eye on them." She "sent a couple of emails in the very beginning of the school year to the administration" about her concerns.

{¶ 13} Harris indicated that volleyball was part of the physical-education curriculum. Harris testified that the students were "engaged" and "wanted to compete," in volleyball, which "they really enjoyed." As a result, Harris "created grades around that."

{¶ 14} Harris testified that volleyballs had hit the MPR ceiling before the incident involving Johnson. "[N]o matter what I tried to do . . . as far as trying to teach them other serves . . . it would hit the ceiling[]." She had seen tiles fall "[o]nce or twice" before one struck Johnson. Also before the incident, Harris emailed

---

[2] Each party cited Harris's deposition in support of their motions for summary judgment.

Principal Reed about fixing the MPR ceiling tiles. She indicated that nothing was done because "everything was a budget issue." Harris had to "keep the students away . . . from" hanging tiles and "made a habit of looking into the classroom" for them before class. If she saw hanging tiles, she alerted custodial staff.

{¶ 15} On December 8, 2022, Harris noticed a tile hanging from the MPR ceiling. She spent "a lot of energy keeping students away from" it. She made students that were playing basketball move their hoop away from the area beneath the tile. She warned students playing volleyball to "be careful of the tiles." Because she was the only adult overseeing a large class, Harris sent a student to inform custodial staff about the damaged tile. To her knowledge, this elicited no response.

{¶ 16} Harris testified that a student served a volleyball, which dislodged a second tile. Harris "couldn't stop the students from playing volleyball," but "was telling them I don't want you guys playing anymore." "I turned away for just one minute," during which a student served a volleyball again. Harris heard students react and turned to see the second tile on the ground and Johnson holding her head. Harris sent another student to "tell someone in the office" that Johnson had been hit by a tile.

### E. Grant of Summary Judgment and Appeal

{¶ 17} On February 13, 2025, the court issued a journal entry granting in part and denying in part Johnson's motion for summary judgment. The court also denied Appellants' motion for summary judgment.

{¶ 18} The court found that, although Appellants are entitled to immunity generally, their "immunity is removed under R.C. 2744.02(B)(4) because Plaintiff's injuries were caused by employee negligence, on the grounds or in buildings used in connection with that governmental function, and were due to a physical defect on or within those grounds or buildings." The trial court went on to find that the Appellants "cannot restore . . . immunity under R.C. 2744.03(A)(5) for the maintenance and upkeep of the ceiling and ceiling tiles in the MP[R]" and "may be liable for Plaintiff's injuries related to the maintenance of the MP[R]'s ceiling." The court also found "a question of material fact as to whether Harris's decision to allow the students to play volleyball in the MPR was made recklessly," meaning "it is a question of material fact as to whether CMSD can restore its immunity under R.C. 2744.03(A)(5) related to the decision to play volleyball in the MPC during gym class."

{¶ 19} From this order, the School District and Harris appealed, raising the following assignments of error:

> 1. The trial court erred to the prejudice of the CMSD Defendants in not granting summary judgment in their favor, as a matter of law, under the open and obvious doctrine since, on December 8, 2022, Johnson continued to play "circle volleyball" with her friends in the MPR despite knowing that ceiling tiles in the MPR could be struck by a volleyball, and if so struck, could be dislodged from, and fall from, the grid holding them in place.
>
> 2. The trial court erred to the prejudice of the CMSD Defendants in finding that the ceiling tiles themselves are a physical defect as a matter of law under R.C. 2744.02(B)(4).
>
> 3. The trial court erred to the prejudice of the CMSD Defendants in finding that the failure to install a safety device to prevent ceiling tiles

from falling is a physical defect as a matter of law under R.C. 2744.02(B)(4).

4. The trial court erred to the prejudice of the CMSD Defendants in failing to find Harris' discretionary decision to allow "circle volleyball" to be played in the MPR on December 8, 2022 only if the participants did not serve the volleyballs such that the balls would strike the ceiling tiles, and after a ball struck a ceiling tile, Harris telling the High School students to stop playing "circle volleyball," was not made recklessly as a matter of law under R.C. 2744.03(A)(5).

## II. Law and Analysis

### A. Summary-Judgment Standard

{¶ 20} "Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law." *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 12, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). A material fact "'might affect the outcome of the suit under the governing law' of the case." *Oko v. Cleveland Div. of Police*, 2021-Ohio-2931, ¶ 23 (8th Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). "A factual dispute is 'genuine' only if 'it allows reasonable minds to return a verdict for the nonmoving party.'" *Huntington Natl. Bank v. Blount,* 2013-Ohio-3128, ¶ 32 (8th Dist.), quoting *Sysco Food Servs. v. Titan Devs.*, 1995 Ohio App. LEXIS 4762, *7 (9th Dist. Oct. 25, 1995).

{¶ 21} The movant for summary judgment has the "initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment." *Madaras* at ¶ 12, citing *Dresher v. Burt*, 75 Ohio St.2d 280,

292-293 (1996). "[D]etermining whether issues of disputed fact exist is different from making findings of facts"; when a court does the former, "the evidence . . . c[an] not be weighed, only reviewed by the trial court and by the court of appeals de novo." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

### B. Political-Subdivision Liability

{¶ 22} Whether a political subdivision is immune from tort liability under the Political Subdivision Tort Liability Act "involves a three-tiered analysis." *Moore v. Lorain Metro. Hous. Auth.*, 2009-Ohio-1250, ¶ 9. First, ordinarily, political subdivisions are not liable for tort damages. *Id.*; R.C. 2744.02(A)(1). Further, "[a] suit against an employee of a political subdivision in the employee's official capacity . . . is an action against the entity itself and the employees are entitled to the same immunity due the political subdivision." *Newton v. Cleveland Law Dept.*, 2015-Ohio-1460, ¶ 17 (8th Dist.), citing *Lambert v. Clancy*, 2010-Ohio-1483. The parties agree that the School District is a political subdivision and Harris, because its employee, was acting in her official capacity. There is, therefore, no dispute that, generally, Appellants are immune from damages arising out of a negligence claim, such as the one Johnson brought.

{¶ 23} We, therefore, begin with the second tier of the immunity analysis: whether exceptions in R.C. 2744.02(B) pierce Appellants' immunity. *Moore* at ¶ 9. Pertinent to this appeal, a political subdivision is liable in tort for damages "caused by the negligence of their employees and that occur[] within or on the grounds of, and is due to physical defects within or on the grounds of," buildings connected to the performance of a government function. R.C. 2744.02(B)(4). The parties do not dispute that Johnson was injured in such a building.[3] They do dispute, however, whether undisputed evidence demonstrated negligence and a physical defect. If the answer to both questions is yes, Appellants may lose immunity and can be held liable.

{¶ 24} The third step of immunity analysis asks whether defenses in R.C. 2744.03 reinstate immunity. *Moore* at ¶ 9. R.C. 2744.03(A)(5) reinstates a political subdivision's immunity for "exercise[s] of judgment or discretion," except those that occurred "with malicious purpose, in bad faith, or in a wanton or reckless manner." Appellants contend that Johnson presented no evidence that Harris's decision met this standard; therefore, Appellants' immunity must be reinstated.

{¶ 25} As discussed below, we find that undisputed evidence demonstrated a physical defect. We also find that a question of fact exists regarding whether Harris acted recklessly.

---

[3] Because both parties submitted evidence that indicates that Johnson received medical care on December 8, 2022, we reference Johnson's "injury" for convenience. However, we make no finding as to the facts or extent of Johnson's injury or Appellants' liability for it, which is not at issue in this appeal.

## C. Assignment of Error No. 1 — The Open-and-Obvious Doctrine Does not Apply

{¶ 26} On appeal, Appellants argue that the trial court erred when it denied their motion for summary judgment because "Johnson cannot meet the first prong of the *physical defect* exception because she cannot show that her injury was caused by employee negligence." According to Appellants, the hazard created by falling ceiling tiles was open and obvious such that Appellants owed no duty to Johnson. Appellants point out that, prior to her injury, Johnson knew tiles in the MPR routinely fell, as demonstrated by photos that she took of gaps in the ceiling and of other students holding fallen tiles. We disagree.

{¶ 27} "[A] premises owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Dynowski v. Solon*, 2009-Ohio-3297, ¶ 26 (8th Dist.), citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. "The rationale underlying this doctrine is that 'the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Id.*, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642 (1992). When applicable, the "open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Id.*, citing *Armstrong v. Best Buy Co.*, 2003-Ohio-2573.

{¶ 28} In applying the open-and-obvious doctrine, courts consider whether a hazard is static or dynamic because the open-and-obvious doctrine only applies to static conditions.

> "The distinction between static and dynamic forms of negligence is legally significant, because it directly correlates to the two separate and distinct duties an occupier owes its business invitees: (1) static conditions relate to the owner's duty to maintain its premises in a reasonably safe condition, while (2) active negligence relates to the owner's duty not to injure its invitees by negligent activities conducted on the premises."

*Goodman v. Orlando Baking Co.*, 2012-Ohio-1356, ¶ 16 (8th Dist.), quoting *Simmons v. Am. Pacific Ents., L.L.C.,* 2005-Ohio-6957, ¶ 20 (10th Dist.). In *Goodman*, this court further explained, "Regardless of the original nature of the condition, it has been recognized that a condition may become static through a lapse of time." *Id.* at ¶ 17. This court found "no evidence to suggest that the conduct of [defendant, a bakery] actively created or changed the condition while [plaintiff] was at the facility." *Id.* at ¶ 18. The court concluded that the bakery was not liable for plaintiff's slip-and-fall injury because waste in which he fell had surrounded a trash compactor for more than an hour, "was a static condition[,] and the open and obvious doctrine applies." *Id.*

{¶ 29} Courts have also limited the application of the open-and-obvious doctrine when an invitee lacked viable alternatives to their course of conduct and, as a result, could not reasonably be expected to protect himself against a hazard. *Goodman* at ¶ 19, citing *Mizenis v. Sands Motel, Inc.*, 50 Ohio App.2d 226 (6th Dist. 1975). "In *Mizenis*, the court held that a hotel guest did not voluntarily assume the risk of navigating a stairway with melted snow and ice when he had unsuccessfully asked the motel manager to remedy the condition and the stairway was the only means to exit the premises." *Id.* Such situations have "been distinguished [where]

the defendant is not faced with forced circumstances or fails to show no reasonable alternatives were available." *Id.*

{¶ 30} We find that the open-and-obvious doctrine does not apply to this case. Undisputed evidence indicates that Johnson was harmed by a dynamic condition. Though Johnson was aware that tiles had fallen in the MPR before, the tile that fell on her head did so immediately after it was struck by a volleyball that another student had just served. Johnson lacked viable alternatives to being in the MPR on the day the ceiling tile struck her on her head. Johnson was required to be in the MPR playing volleyball. She was enrolled in Harris's physical-education course, which was required for her to graduate. The class took place in the MPR, and volleyball was part of the curriculum. Because the undisputed evidence shows that Johnson was harmed by a dynamic condition under nonvoluntary circumstances, we find that the open-and-obvious doctrine does not apply here to avoid the application of R.C. 2744.02(B)(4).

{¶ 31} Accordingly, assignment of error No. 1 is overruled.

### D. Assignment of Error No. 2 — Undisputed Evidence Demonstrates that the Condition of the MPR Ceiling Constituted a Physical Defect

{¶ 32} Appellants assert that the court erred in finding that the condition of the MPR ceiling amounted to a physical defect under R.C. 2744.02(B)(4). We disagree.

{¶ 33} Courts across Ohio have found a physical defect ""if the instrumentality that caused [an] injury did not operate as intended due to a

perceivable condition or if the instrumentality contained a perceivable imperfection that impaired its worth or utility.”’” *Soler v. Cleveland Metro. School Dist.*, 2025-Ohio-2151, ¶ 21 (8th Dist.), quoting *Slane v. Hilliard*, 2016-Ohio-306, ¶ 44 (10th Dist.), quoting *Jones v. Delaware City School Dist. Bd. Of Edn.*, 2013-Ohio-3907, ¶ 22 (5th Dist.).

{¶ 34} Appellants argue that the tile fell on Johnson not because of a physical defect, but because students put it to improper use. According to Appellants, Johnson provided no evidence that the MPR ceiling was intended to deflect volleyballs. Appellants also point to a prior case in which this court found no evidence that a ceiling tile was “anything other than . . . aesthetic.” *Canidate v. Cuyahoga Metro. Hous. Auth.*, 2015-Ohio-880, ¶ 21 (8th Dist.) (A tile missing from the ceiling of an apartment building’s television room was not a physical defect under R.C. 2744.02(B)(4).).

{¶ 35} We are not persuaded by this comparison. In *Canidate*, the plaintiff slipped and fell in a pool of water that had drained through a gap in the ceiling. *Id.* at ¶ 2-3, 5. To prove that the missing ceiling tile caused his injury, the plaintiff had to establish that the purpose of the missing tile was to contain the water in which he slipped and fell. *Id.* at ¶ 21. *Compare Cuyahoga Falls v. Gaglione*, 2017-Ohio-6974, ¶27 (9th Dist.) (Summary judgment was properly denied to school district where plaintiff set forth sufficient evidence of physical defect based on “the Natatorium’s leaky roof, a defect that resulted in a water accumulation on the gym floor” on which

the plaintiff slipped and fell.). Unlike the plaintiff in *Canidate*, Johnson was struck by a ceiling tile itself, which was dislodged from its intended place in the ceiling.

{¶ 36} Further, Johnson provided undisputed evidence of perceivable imperfections that impaired the MPR ceiling's utility, so as to constitute a physical defect under R.C. 2744.02(B)(4). *See Soler*, 2025-Ohio-2151, at ¶ 21. Photos that Johnson took in October 2022 appear to show numerous tiles missing or hanging from the MPR ceiling. Ransaw indicated that these tiles needed to be replaced routinely.

{¶ 37} The damaged ceiling also diminished the MPR's usefulness as a venue for physical-education classes. Harris testified that, before this incident, volleyballs had struck the ceiling and caused tiles to fall. She spent "a lot of energy" keeping students away from hanging tiles. She stated that "it wasn't the safest" for one teacher "trying to teach over 60 students . . . and keep an eye on them."

{¶ 38} Appellants argue that its decision to use the MPR for volleyball was not "material or tangible" and thus cannot be characterized as a physical defect under R.C. 2744.02(B)(4). Regardless, the MPR ceiling itself is material and tangible. As discussed above, undisputed evidence demonstrated a physical defect thereto.

{¶ 39} For the reasons above, the court did not err in finding a physical defect under R.C. 2744.02(B)(4). Accordingly, assignment of error No. 2 is overruled.

**E. Assignment of Error No. 3 — Johnson Has Not Demonstrated that the School District's Failure to Install a Safety Device Constituted a Physical Defect**

{¶ 40} Appellants assert that the court erred in finding that its failure to install a safety device "to prevent the tiles from falling to the ground" constituted a physical defect under R.C. 2744.02(B)(4). Appellants argue that Johnson presented no evidence in support of this finding.

{¶ 41} A plurality of the Ohio Supreme Court has recognized that "the lack of safety equipment or other safety features could amount to a physical defect" within the meaning of R.C. 2744.02(B)(4). *Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 27. In *Doe,* the plaintiffs, who were students in a science class, alleged that a bottle of isopropyl alcohol caught fire and exploded. They claimed their resulting injuries were caused by the negligent supervision of a teacher and the lack of a fire extinguisher and other safety equipment in the classroom. The plurality of the Court determined those allegations were sufficient to defeat a motion to dismiss; if proven, those allegations would demonstrate that R.C. 2744.02(B)(4) applied. *Id.* at ¶ 28.

{¶ 42} In support of her argument about the lack of safety equipment in the MPR, Johnson submitted the Zimmerman expert report, which notes that no "hold-down clips" were present in the MPR ceiling. The report includes a link to a website that purports to sell these clips.

{¶ 43} However, Johnson has not demonstrated that the absence of hold-down clips in the MPR constituted a physical defect. The record contains no

evidence as to what a hold-down clip is, whether it was feasible to install such clips in the MPR, or even the clips' purpose. As such, we cannot determine on the record before us whether hold-down clips would have made the MPR and its ceiling safer. The same cannot be said for whether a fire extinguisher would enhance safety in the event of a fire, distinguishing this case from *Doe*.

{¶ 44} Based on this record, we cannot say that the lack of hold-down clips in the MPR constituted a physical defect. Accordingly, assignment of error No. 3 is sustained.[4]

## F. Assignment of Error No. 4 – The Court did not Err in Finding a Dispute of Fact Existed Regarding Whether Harris's Decision to Play Volleyball in The MPR was Reckless

{¶ 45} Appellants argue that the court erred in finding a dispute of fact regarding whether Harris's decision to play volleyball in the MPR was reckless.[5] According to Appellants, Johnson presented no evidence that demonstrated Harris's conduct rose to this level of culpability.

{¶ 46} As discussed above, under R.C. 2744.03(A)(5), a finding that Harris exercised judgment or discretion would reinstate immunity unless she acted in a wanton or reckless manner. Appellants do not dispute that Harris's decision to have

---

[4] Having determined above that Johnson demonstrated another physical defect — the damaged ceiling — we do not disturb the trial court's overall conclusion that Appellants lose immunity under the physical defect exception in R.C. 2744.02(B)(4).

[5] Appellants do not argue that Harris acted with malicious purpose, in bad faith, or in a wanton manner.

the students play volleyball in the MPR when Johnson was allegedly injured was an exercise of judgment or discretion.

{¶ 47} "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 34. "Whether a political subdivision employee acted in a wanton or reckless manner . . . is generally a question of fact for the jury." *Carter v. Officer Hymes*, 2020-Ohio-3967, ¶ 39 (8th Dist.). In *Carter*, this court found a question of fact existed as to immunity where "reasonable minds could disagree on whether" an officer "acted in a reckless manner" under the circumstances. *Id.*

{¶ 48} Reasonable minds could disagree as to whether, in deciding that the students could play volleyball, Harris consciously disregarded a known or obvious and unreasonable risk. As noted, Johnson presented photographs showing that over a month before the ceiling tile fell on her head numerous ceiling tiles were missing or hanging from the MPR ceiling. Ransaw indicated that ceiling tiles needed to be replaced routinely. Harris testified that the MPR had a lower ceiling than a conventional gym. She knew that volleyballs hit the ceiling, testifying, "[N]o matter what I tried to do . . . as far as trying to teach them other serves . . . it would hit the ceiling[]." Harris also testified that she had seen ceiling tiles fall "[o]nce or twice" before one struck Johnson. Nonetheless, Harris included volleyball in her physical-

education curriculum, testifying that she "created grades" around the sport because her students enjoyed it.

{¶ 49} On the other hand, Harris also testified that she took precautions to reduce the risk that the damaged ceiling posed to her students. She reminded students not to hit the tiles, directed students away from hanging tiles, and alerted custodial staff when tiles needed to be replaced. The record does not establish whether Harris's efforts to communicate with the students about the hanging tile were effective or adequate under the circumstances.

{¶ 50} Viewing the evidence in a light most favorable to the appellee, reasonable minds could disagree regarding whether Harris acted in a reckless manner under the circumstances. As such, the court did not err in denying summary judgment regarding whether Harris acted recklessly. Accordingly, assignment of error No. 4 is overruled.

{¶ 51} Judgment affirmed in part and reversed in part. The trial court properly determined that, based on the undisputed facts, the open-and-obvious doctrine does not operate to avoid application of the physical defect exception to immunity under R.C. 2744.02(B)(4). The trial court properly found that, based on the undisputed facts, the ceiling with its damaged and hanging tiles constituted a physical defect under R.C. 2744.02(B)(4). The trial court erred in concluding that the failure to provide a safety device amounted to a physical defect in that the evidence in the record did not support that conclusion. Finally, the trial court did not err in finding issues of fact remain regarding whether Harris's conduct rose to

the level of recklessness.  Case remanded to the trial court for further proceedings consistent with this opinion.

{¶ 52} Judgment affirmed in part and reversed in part.  Case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)